# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-051

Filing Date: October 18, 2010

Docket No. 32,063

ROSEMARY JORDAN, SCOTT JORDAN,
TRACEY JORDAN, DONALD ROMERO,
and THERESA ROMERO,

       Plaintiffs-Respondents,

v.

ALLSTATE INSURANCE COMPANY,

       Defendant-Petitioner.

Consolidated with:

Docket No. 32,065

DONALD ROMERO and THERESA ROMERO,

       Plaintiffs-Respondents,

v.

PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY,

       Defendant-Petitioner.

Consolidated with:

Docket No. 32,203

CONSUELO LUCERO,

       Plaintiff-Respondent,

v.

1

**DAVID TRUJILLO, SAFECO INSURANCE COMPANY OF AMERICA, and PROGRESSIVE HALCYON INSURANCE COMPANY,**

**Defendants-Petitioners.**

**ORIGINAL PROCEEDINGS ON CERTIORARI**
**Eugenio S. Mathis, James A. Hall, and Theodore C. Baca, District Judges**

**Modrall, Sperling, Roehl, Harris & Sisk, P.A.**
**Lisa Mann**
**Jennifer A. Noya**
**Albuquerque, NM**

**for Petitioner Allstate Insurance Company**

**Simone, Roberts & Weiss, P.A.**
**Meena H. Allen**
**Albuquerque, NM**

**for Petitioner Progressive Northwestern Insurance Company**

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Douglas G. Schneebeck
Alex C. Walker
Albuquerque, NM

for Petitioner Progressive Halcyon Insurance Company

Berardinelli Law Firm, L.L.C.
David J. Berardinelli
Santa Fe, NM

O'Friel and Levy, P.C.
Daniel J. O'Friel
Pierre Levy
Santa Fe, NM

for Respondents Rosemary Jordan, Scott Jordan, Tracey Jordan, Donald Romero, and Theresa Romero

Garcia & Vargas, L.L.C.
Ray M. Vargas, II
Santa Fe, NM

Law Office of Geoffrey R. Romero
Geoffrey R. Romero
Albuquerque, NM

Bach & Garcia, L.L.C.
Matthew L. Garcia
Albuquerque, NM

for Respondent Consuelo Lucero

**OPINION**

**DANIELS, Chief Justice.**

**{1}** The plaintiff insureds (Plaintiffs) in these three consolidated cases were issued uninsured/underinsured motorist (UM/UIM) coverage in amounts less than the liability coverage provided by their automobile insurance policies. *See Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 15, ___ N.M. ___, ___ P.3d ___ (No. 32,220, Oct. 18, 2010) (holding that New Mexico's uninsured motorist statute, NMSA 1978, Section 66-5-301 (1983), "requires an insurer to offer UM/UIM coverage in an amount equal to the liability limits of the policy and that the choice of the insured to purchase any lower amount functions as a rejection of that maximum amount of coverage statutorily possible"). The Court of Appeals concluded that none of the defendant insurers obtained valid rejections of UM/UIM coverage as required by statute, Section 66-5-301, and by regulation, 13.12.3.9 NMAC, and that the appropriate remedy was to reform the policies to provide UM/UIM coverage equal to the liability limits.

**{2}** We affirm the Court of Appeals and hold that a rejection of UM/UIM coverage equal to the liability limits in an automobile insurance policy must be made in writing and must be made a part of the insurance policy that is delivered to the insured. In order to honor these requirements effectively, insurers must provide the insured with the premium charges corresponding to each available option for UM/UIM coverage so that the insured can make a knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled. If an insurer fails to obtain a valid rejection, the policy will be reformed to provide UM/UIM coverage equal to the limits of liability.

**I. BACKGROUND**

**{3}** We granted writs of certiorari in three cases, *Jordan v. Allstate Insurance Co.*, No. 32,063, *Romero v. Progressive Northwestern Insurance Co.*, No. 32,065, and *Lucero v. Trujillo*, No. 32,203, and held them in abeyance pending our resolution of *Weed Warrior*, 2010-NMSC-050, filed on the same date as this Opinion. In their petitions for certiorari, the insurers collectively raise six issues: (1) whether insurers must affirmatively offer UM/UIM coverage in an amount equal to the liability coverage selected by an insured; (2) whether an

insured's selection of less UM/UIM coverage than liability coverage constitutes a rejection of UM/UIM coverage equal to the liability limits; (3) if such a selection is a rejection, what form and manner must a valid rejection take; (4) whether our Court of Appeals erred in its interpretation of Section 66-5-301; (5) whether our holding in this case should be applied prospectively or retroactively; and (6) whether our Court of Appeals erred by reforming the automobile liability policies in these cases to provide UM/UIM coverage equal to the liability limits.

{4}     *Weed Warrior*, 2010-NMSC-050, ¶¶ 13-15, answers the first two questions, holding that insurers must affirmatively offer UM/UIM coverage in an amount equal to the policy's liability limits and that an insured's decision to purchase a lesser amount of UM/UIM coverage constitutes a rejection. This Opinion addresses the remaining questions. Before discussing these issues, we summarize the background of each case.

### a.  Jordan v. Allstate Insurance Company

{5}     Two sets of insureds, Scott, Tracey, and Rosemary Jordan (the Jordans) and Donald and Theresa Romero (the Romeros)[1] had policies with Allstate Insurance Company that provided liability limits of $100,000 per person and UM/UIM bodily injury coverage of $25,000 per person. During the application process, Scott Jordan and Theresa Romero each signed and dated an Allstate UM/UIM Selection/Rejection form. The UM/UIM Selection/Rejection forms provided a list of coverage options ranging from $25,000 per person/$50,000 per accident to $2,000,000 per person/$2,000,000 per accident. The forms signed by Jordan and Romero have a checkmark next to the lowest available UM/UIM coverage level, $25,000 per person/$50,000 per accident, and a checkmark next to the following option: "I want to purchase Uninsured Motorists Insurance for Bodily Injury at the [coverage] limits which I have indicated below. I understand that I may only purchase Uninsured Motorists Insurance for Bodily Injury up to my Bodily Injury Liability . . . limits."

{6}     Allstate periodically delivered declarations pages to the Jordans and the Romeros that indicated the amounts of liability and UM/UIM coverage provided under the policies. According to the last page of declarations, the Jordans' and Romeros' policies consisted of

---

[1]Donald Romero and Theresa Romero are plaintiffs in both *Jordan v. Allstate Insurance Co.*, No. 32,063, and *Romero v. Progressive Northwestern Insurance Co.*, No. 32,065. Both cases concern an accident involving Donald Romero and an uninsured motorist. The Allstate policy covered the vehicle in which Romero was riding, making Allstate the primary insurer on the UM/UIM risk. *See State Farm Mut. Auto. Ins. Co. v. Jones*, 2006-NMCA-060, ¶ 12, 139 N.M. 558, 135 P.3d 1277 ("In making the distinction between primary and secondary insurers . . . the automobile policy 'closest to the risk' ranks ahead of other policies insofar as priority for payment is concerned, and thus is the primary insurer."). Romero also had a commercial policy with Progressive Northwestern, which was the secondary insurer.

these declarations pages and two forms, each indicated by form number only, that are not included in or described by the record before this Court. The signed UM/UIM Selection/Rejection forms were not attached to the declarations pages, and the declarations pages did not expressly inform the Jordans and the Romeros that UM/UIM coverage equal to the limits of liability had been rejected.

**{7}** Allstate also sent the Jordans and the Romeros generic (that is, not policy specific) "Important Notice" forms, instructing the recipients to review their policies' declarations pages to verify that UM/UIM coverage had been issued as requested. The Important Notice forms explained that policyholders may purchase UM/UIM coverage "equal to, but not greater than, [their] limits for Bodily Injury Liability Insurance and Property Damage Liability Insurance [and] . . . at limits less than [their] BI and PD limits, but not less than the minimum limits required by law in New Mexico[,] . . . [or they] may reject UM coverage entirely."

**{8}** Rosemary Jordan and Donald Romero were injured by uninsured/underinsured motorists in two separate accidents while their Allstate policies were in effect. Allstate paid the Jordans and the Romeros UM/UIM benefits in the amounts specified by their policies.

### b. *Romero v. Progressive Northwestern Insurance Company*

**{9}** At the time of his accident, Donald Romero, as sole proprietor of AllTech Electric, had a commercial automobile insurance policy with Progressive Northwestern Insurance Company, in addition to his personal Allstate policy. The Progressive policy contained single liability limits of $100,000 and UM/UIM limits of $50,000 per person. Romero attested by affidavit that during the application process he never signed a document rejecting higher limits of UM/UIM coverage and was not told he could obtain UM/UIM coverage equal to his liability limits. There is no other evidence in the record concerning his application process. The policy Progressive delivered to Romero contained declarations pages listing the amounts of liability and UM/UIM coverage provided by the policy. The policy did not indicate that any amount of UM/UIM coverage had been rejected. After Donald Romero's accident, Progressive, as Romero's secondary insurer, paid Romero $50,000 in UM/UIM coverage stacked for each of the three vehicles insured by the policy, for a total of $150,000.

### c. *Lucero v. Trujillo*

**{10}** Diana Lucero purchased her insurance through Progressive Halcyon Insurance Company's website. Progressive Halcyon's website uses customer-entered information to suggest an insurance package, which the customer can alter using "pull-down menus." In her online application, Diana Lucero clicked on liability limits of $50,000 per person. While Progressive Halcyon's suggested packages provide default UM/UIM coverage equal to the liability limits, customers can purchase lesser amounts of UM/UIM coverage by using a pull-down menu. Diana Lucero clicked on the minimum amount of UM/UIM coverage available,

$25,000 per person.

**{11}**     After purchasing a policy from Progressive Halcyon, Diana Lucero's selections were listed on declarations pages. Further contract terms were provided in a generic New Mexico Motor Vehicle Policy. Toward the end of the forty-nine-page policy, a short paragraph states that the online application "is made a part of this policy as if attached hereto." The record does not show whether Diana Lucero printed the declarations pages and policy at home or whether Progressive Halcyon delivered them in some other way. Neither the declarations pages nor the policy expressly alerted Diana Lucero to the fact that she had rejected UM/UIM coverage equal to her liability limits.

**{12}**     Consuelo Lucero, who was covered by the Progressive Halcyon policy, was injured in an accident with an underinsured motorist. Progressive paid Consuelo Lucero $50,000 in UM/UIM benefits, computed by stacking $25,000 for each of three cars, from which the other driver's $25,000 policy coverage was deducted.

## II. DISCUSSION

**{13}**     The insureds in each of these cases brought suit against their insurers in a New Mexico district court, arguing that each insurer failed to obtain a valid rejection of UM/UIM coverage equal to the limits of liability. The Court of Appeals concluded in each case that the insurer failed to obtain a valid rejection and that the policy should be reformed to provide UM/UIM coverage equal to the liability limits. *Jordan v. Allstate Ins. Co.*, No. 28,638, slip. op. at 10 (N.M. Ct. App. Oct. 29, 2009), *cert. denied*, 2010-NMCERT-001, 147 N.M. 673, 227 P.3d 1055, *reh'g granted*, 2010-NMCERT-003, ___ N.M. ___, ___ P.3d ___ (No. 32,063, Mar. 1, 2010); *Romero v. Progressive Nw. Ins. Co.* (*Romero v. Progressive*), 2010-NMCA-024, ¶ 2, 148 N.M. 97, 230 P.3d 844, *cert. denied*, 2010-NMCERT-001, 147 N.M. 673, 227 P.3d 1055, *reh'g granted*, 2010-NMCERT-003, ___ N.M. ___, ___ P.3d ___ (No. 32,065, Mar. 1, 2010); *Lucero v. Trujillo*, No. 29,859, slip op. at 2 (N.M. Ct. App. Jan. 7, 2010), *cert. granted*, 2010-NMCERT-003, ___ N.M. ___, ___ P.3d ___ (No. 32,203, Mar. 1, 2010). We consolidated these cases and resolve them through this single Opinion in order to provide guidance on the technical requirements for valid offers and rejections of UM/UIM coverage.

### a.  *Standard of Review*

**{14}**     Our resolution of these cases requires us to interpret Section 66-5-301 and 13.12.3.9 NMAC in order to determine the form and manner that offers and rejections of UM/UIM coverage must take in light of *Weed Warrior*, 2010-NMSC-050. The relevant facts in each case are undisputed. Accordingly, these cases present questions of law, which we review de novo. *See Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 13, 147 N.M. 678, 228 P.3d 462.

**{15}**     This Court's primary goal when interpreting statutes is to further legislative intent.

6

*Jolley v. Associated Elec. & Gas Ins. Servs. Ltd.*, 2010-NMSC-029, ¶ 8, 148 N.M. 436, 237 P.3d 738. When construing the legislative intent behind our UM/UIM statute, this Court has long applied a "qualitatively different analysis" than we use when construing many other types of statutes and insurance policies. *Padilla v. Dairyland Ins. Co.*, 109 N.M. 555, 558, 787 P.2d 835, 838 (1990). In a consistent line of cases, this Court has liberally interpreted Section 66-5-301 and its implementing regulation, now codified as 13.12.3.9 NMAC, for their remedial purposes. *See Phoenix Indem. Ins. Co. v. Pulis*, 2000-NMSC-023, ¶ 7, 129 N.M. 395, 9 P.3d 639; *Romero v. Dairyland Ins. Co.* (*Romero v. Dairyland*), 111 N.M. 154, 155-56, 803 P.2d 243, 244-45 (1990). The provision of the maximum possible amount of UM/UIM coverage in every insurance policy is the default rule, and any exception to that rule must be "construed strictly to protect the insured." *Romero v. Dairyland*, 111 N.M. at 156, 803 P.2d at 245; *see also Weed Warrior*, 2010-NMSC-050, ¶ 14 (explaining that our statutory scheme requires that insurers offer the maximum amount of UM/UIM coverage possible).

### b. A Rejection of UM/UIM Coverage Equal to the Liability Limits Must Be Made in Writing and Must Be Meaningfully Incorporated into the Policy Delivered to the Insured.

**{16}** Section 66-5-301 governs UM/UIM insurance coverage in New Mexico. Subsection A entitles the insured to UM/UIM coverage "in minimum limits . . . and such higher limits as may be desired . . . up to the limits of liability." The minimum limits are set forth in the Mandatory Financial Responsibility Act, NMSA 1978, Section 66-5-215 (1983). Section 66-5-301(A); *see also Weed Warrior*, 2010-NMSC-050, ¶ 5. Section 66-5-301(B) provides that "uninsured motorist coverage . . . shall include underinsured motorist coverage." Section 66-5-301(C) provides that the "insured shall have the right to reject" the uninsured motorist coverage or underinsured motorist coverage that is "described in Subsections A and B." Section 66-5-301 does not expressly specify the form or manner that a rejection must take in order to be effective. *Romero v. Dairyland*, 111 N.M. at 155, 803 P.2d at 244.

**{17}** The form and manner of a valid rejection are established by "the rules and regulations promulgated by the superintendent of insurance." *Kaiser v. DeCarrera*, 1996-NMSC-050, ¶ 8, 122 N.M. 221, 923 P.2d 588. Regulation 13.12.3.9 NMAC provides that "[t]he rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required *in writing* by the provisions of Section 66-5-301 NMSA 1978 must be endorsed, attached, stamped or otherwise *made a part of the policy* of bodily injury and property damage insurance." (Emphasis added.)

**{18}** This Court has determined that 13.12.3.9 NMAC contains two distinct requirements: (1) the rejection must be in writing and (2) the rejection must be made a part of the policy. *See Marckstadt*, 2010-NMSC-001, ¶ 20 (explaining that 13.12.3.9 NMAC explicitly requires the rejection to be in writing); *Romero v. Dairyland*, 111 N.M. at 156, 803 P.2d at 245 ("[T]he rejection [must] be made a part of the policy delivered to the insured."). By requiring insurance carriers to offer UM/UIM coverage in a meaningful way and to obtain any rejections of the statutorily authorized coverage in writing, 13.12.3.9 NMAC and

7

Section 66-5-301 ensure that rejections of the authorized coverage are knowingly and intelligently made. *See Marckstadt*, 2010-NMSC-001, ¶¶ 16-17. Once an insurer has obtained a written, objective manifestation of the insured's decision to reject, that rejection must be incorporated into the policy in a way that will "clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived." *Romero v. Dairyland*, 111 N.M. at 156, 803 P.2d at 245. The rejection must "be made a part of the policy delivered to the insured . . . to ensure that the insured has affirmative evidence of the extent of coverage." *Id.* Incorporating the rejection into the policy keeps the insured well-informed about the decision to reject coverage and allows the insured to reconsider his or her rejection after "further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home." *Id.*

**{19}** Section 66-5-301's plain language and underlying policy dictate that the requirements for a valid rejection found in 13.12.3.9 NMAC must be complied with when an insured purchases some UM/UIM coverage but rejects UM/UIM coverage equal to the liability limits, because any other outcome would create an unprincipled anomaly in the fabric of our law. *See* § 66-5-301(B) ("uninsured motorist coverage . . . shall include underinsured motorist coverage"); § 66-5-301(C) (providing that the insured has a right to reject UM/UIM coverage); *Weed Warrior*, 2010-NMSC-050, ¶ 10 (explaining the difference between underinsured and uninsured motorist coverage). We hold that a rejection of UM/UIM coverage equal to the limits of liability is valid only if it is obtained in writing and made a part of the policy that is delivered to the insured.

### c. Insurance Carriers Must Provide the Insured with the Premium Charges Corresponding to Each Available Coverage Option.

**{20}** Despite this Court's repeated pronouncements that an insured's decision to reject UM/UIM coverage must be knowing and intelligent in order to effectuate New Mexico's public policy, *see, e.g.*, *Marckstadt*, 2010-NMSC-001, ¶ 16; *Romero v. Dairyland*, 111 N.M. at 156-57, 803 P.2d at 245-46, these consolidated cases indicate that insurers continue to offer UM/UIM coverage in ways that are not conducive to allowing the insured to make a realistically informed choice. Accordingly, we find it necessary to prescribe workable requirements for a valid and meaningful rejection of UM/UIM coverage in amounts authorized by statute.

**{21}** When issuing an insurance policy, an insurer must inform the insured that he or she is entitled to purchase UM/UIM coverage in an amount equal to the policy's liability limits and must also provide the corresponding premium charge for that maximum amount of UM/UIM coverage. The premium cost for the minimum amount of UM/UIM coverage allowed by Section 66-5-301(A) must also be provided, as well as the relative costs for any other levels of UM/UIM coverage offered to the insured. The insured must be informed that he or she has a right to reject UM/UIM coverage altogether. Providing the insured with a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision about the level of UM/UIM coverage he or she wants to purchase and

can afford and will minimize uncertainty and litigation with regard to the coverage that the insured has obtained.

### d. *If an Insurer Does Not Obtain a Valid Rejection of UM/UIM Coverage, the Policy Will Be Reformed to Provide UM/UIM Coverage Equal to the Liability Limits.*

**{22}** Insurers have statutory obligations to offer UM/UIM coverage up to the liability limits of the policy, *see Weed Warrior*, 2010-NMSC-050, ¶ 14, and to obtain a valid rejection before excluding UM/UIM coverage from the policy, *see Marckstadt*, 2010-NMSC-001, ¶ 16. If an insurer does not (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject, the policy will be reformed to provide UM/UIM coverage equal to the liability limits. These requirements are consistent with those we articulated in *Marckstadt*, 2010-NMSC-001, ¶ 18 ("Unless the rejection requirements of 13.12.3.9 NMAC are strictly met, UM/UIM coverage will be read into an automobile liability policy.").

**{23}** Progressive argues that reforming policies to provide UM/UIM coverage equal to the liability limits would undermine freedom of contract. We disagree. As this Court has explained, "although . . . public policy generally supports freedom of contract, the necessity of meeting the statutory and regulatory requirements plainly conditions freedom of contract" in the context of UM/UIM insurance. *Marckstadt*, 2010-NMSC-001, ¶ 18 (citation omitted). We seek an approach to UM/UIM coverage that "best balances the interests in permitting private contractual relations between the parties, and honoring the broad intent of the [UM/UIM] statute." *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, ¶¶ 18-19, 135 N.M. 681, 92 P.3d 1255 (internal quotation marks and citation omitted) (holding that "an insurance company should obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision").

**{24}** In *Montano*, this Court struck that balance by requiring insurance carriers to provide insureds with the premium costs for each available level of stacked coverage in order to allow insureds to contract for the amount of coverage they can afford and want to purchase. 2004-NMSC-020, ¶ 20. Likewise, by including premium prices for each available UM/UIM coverage level, insurance carriers meaningfully enable consumers to make a knowing and intelligent purchase or rejection of UM/UIM coverage. Requiring insurers to provide a list of coverage options with corresponding costs actually enhances freedom of contract because insureds' expectations will be met and they will get exactly what they consciously choose to pay for. *Id.* ¶¶ 18-20. Insurers benefit because they will not face the risk of providing coverage for which they are not compensated.

### e. *Our Holding in These Cases Is Not Limited to Prospective Application.*

9

**{25}** In these cases, we detail for the first time the technical requirements for a valid rejection of UM/UIM coverage in an amount equal to liability limits. By requiring insurance carriers to list premium costs corresponding to each available UM/UIM coverage level, we are providing specific guidance concerning the form and manner that valid offers and rejections of UM/UIM insurance must take to comply with controlling statutory and regulatory provisions. We therefore consider whether or not our holding should be limited to prospective application only, and not to policies, like those in the cases before us, that were issued before the date of this Opinion. Allstate argues that our Opinion should be given selective prospectivity, which occurs when a judicial decision is applied to the parties before the court in a case adopting a new rule and to parties whose conduct occurs after the announcement of the new rule but not to other parties whose conduct occurred before the announcement of the new rule. *See Beavers v. Johnson Controls World Servs., Inc.*, 118 N.M. 391, 397 n.7, 881 P.2d 1376, 1382 n.7 (1994). Progressive contends that this Opinion should be followed purely prospectively, applying the rule only to conduct occurring after our decision is announced. *Id.*

**{26}** This Court has declined to follow the federal courts' bright-line rule applying appellate court decisions retroactively in all civil cases. *Id.* at 393, 881 P.2d at 1378 (declining to follow the federal rule); *see also Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 86, 90 (1993) (establishing the retroactivity rule for federal cases). In lieu of a bright-line rule, New Mexico follows "a presumption that a new rule adopted by a judicial decision in a civil case will operate retroactively." *Beavers*, 118 N.M. at 398, 881 P.2d at 1383. The presumption of retroactive application "can be overcome by an express declaration, in the case announcing the new rule," that the rule is intended to operate with selective prospectivity or pure prospectivity. *Id.*

**{27}** This Court uses three factors to determine whether the presumption of full retroactive application has been overcome. Under the first factor, "'the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.'" *Marckstadt*, 2010-NMSC-001, ¶ 31 (quoting *Beavers*, 118 N.M. at 398, 881 P.2d at 1383). Progressive contends that insurers historically have relied on their understanding that 13.12.3.9 NMAC does not apply to an insured's decision to purchase UM/UIM coverage in less than maximum amounts. We believe such reliance is unreasonable in light of the plain language of Section 66-5-301 and 13.12.3.9 NMAC. Section 66-5-301(C) states that the insured "shall have the *right to reject* uninsured motorist coverage as described in *Subsections A and B*." (Emphasis added.) Subsection B makes it clear that *uninsured* motorist coverage includes *underinsured* motorist coverage. These provisions, read together, plainly state our Legislature's intent to give each insured the right to reject UM coverage in its entirety or a portion of the maximum coverage to which an insured is entitled. Insurers were on notice that 13.12.3.9 NMAC applies to all rejections of UM/UIM coverage. Additionally, although in the past we have not expressly articulated the need for insurers to provide premium costs for each available UM/UIM coverage level, our holding is based on settled principles articulated in twenty years of

10

UM/UIM jurisprudence. *See, e.g.*, *Montano*, 2004-NMSC-020, ¶ 20 (requiring insurers to provide premium costs for each available level of stacked UM/UIM coverage); *Romero v. Dairyland*, 111 N.M. at 156, 803 P.2d at 245 (explaining that any rejection must be "knowingly and intelligently made" and requiring the insurer to give the insured "affirmative evidence of the extent of coverage"). We conclude that the first *Beavers* factor weighs against limiting our holding to a prospective application.

**{28}** Second, when deciding whether a decision should be limited to a prospective application, this Court must "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Marckstadt*, 2010-NMSC-001, ¶ 31 (quoting *Beavers*, 118 N.M. at 398, 881 P.2d at 1383). We conclude that retroactive application will provide meaningful enforcement of the requirements of Section 66-5-301 and 13.12.3.9 NMAC, ensuring that every insured has been afforded his or her statutory right to either obtain UM/UIM insurance coverage equal to the liability limits of the policy or to make a knowing and intelligent rejection of part or all of that coverage. As we noted in *Marckstadt*, "[t]he Legislature and the superintendent of insurance intended their rules to take effect immediately, and we will not second-guess them." 2010-NMSC-001, ¶ 31.

**{29}** Third, this Court must consider "the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Marckstadt*, 2010-NMSC-001, ¶ 31 (quoting *Beavers*, 118 N.M. at 398, 881 P.2d at 1383). These cases illustrate that in many instances, insurers have been neither providing premium information nor collecting premiums for the full amount of statutorily authorized insurance coverage. Reforming the policies to provide the statutorily authorized coverage will necessarily result in an unplanned cost to insurers who have not secured meaningful rejection and who have not collected appropriate premiums for full coverage. On balance, we deem it more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law, than to let the burdens fall on non-expert insureds, who are the Legislature's intended beneficiaries. *See id.* Declining prospective application also will ensure that similarly situated insureds will be treated equally. *See Beavers*, 118 N.M. at 398, 881 P.2d at 1383 (adopting the presumption of retroactivity "[b]ecause of the compelling force of the desirability of treating similarly situated parties alike"). On balance, the equities do not favor any form of prospective-only application.

*f. The Insurers in These Cases Did Not Obtain Valid Rejections of UM/UIM Coverage.*

**{30}** UM/UIM coverage equal to the liability limits is the default coverage unless an insurer (1) offers the insured UM/UIM coverage equal to the policy's liability limits, (2) provides premium costs corresponding to the available levels of UM/UIM coverage, (3) obtains a written rejection of UM/UIM coverage equal to the liability limits, and (4) makes that rejection a part of the policy that is delivered to the insured. In each of the consolidated

11

cases before us, we affirm the Court of Appeals' conclusion that the requirements for a valid rejection of UM/UIM coverage were not met, and we agree that the proper remedy in each case is to reform the policies to provide UM/UIM coverage equal to the liability limits.

{31}    In *Jordan v. Allstate Insurance Co.*, we conclude that Allstate offered UM/UIM coverage equal to the liability limits in Plaintiffs' policies because the UM/UIM Selection/Rejection forms included a menu of coverage options ranging from the statutory minimum up to $2 million, along with a statement informing the insureds that they could "only purchase Uninsured Motorists Insurance for Bodily Injury up to [the] Bodily Injury Liability . . . limits." Scott Jordan and Theresa Romero signed Allstate's forms that purportedly rejected their statutorily authorized UM/UIM coverage.[2]

{32}    The rejections were insufficient as a matter of law, however, both because the UM/UIM Selection/Rejection forms did not provide the premium costs for each available coverage option and because the rejections were not made a part of the policies delivered to the Jordans and the Romeros. Allstate does not dispute that the UM/UIM Selection/Rejection forms were never attached to the Romero or Jordan policies. Instead, Allstate argues that the signed forms show that the Jordans and the Romeros "knowingly and intelligently elected to purchase minimum UM/UIM coverage limits." In so arguing, Allstate ignores 13.12.3.9 NMAC, which states that a rejection "*must* be endorsed, attached, stamped or otherwise made a part of the policy." (Emphasis added.) The insurance policy delivered to the insureds needed to expressly state that UM/UIM coverage had been rejected. Although the declarations pages sent to the Romeros and the Jordans listed the amounts of liability and UM/UIM coverages provided by the policies, "the pages did not contain specific references to Plaintiffs' rejection of UM/UIM coverage" and therefore did not satisfy 13.12.3.9 NMAC. *Jordan*, No. 28,638, slip op. at 10. Allstate could have incorporated the rejection into the policy by clearly stating on the declarations pages that UM/UIM coverage equal to the policies' liability limits had been rejected. *Accord Vigil v. Rio Grande Ins. of Santa Fe*, 1997-NMCA-124, ¶¶ 7, 11, 24, 124 N.M. 324, 950 P.2d 297 (holding that the rejection was made a part of the policy because the declarations pages included the statements "UNINSURED MOTORIST COVS REJECTED" and "UNINSURED MOTORISTS COVERAGES HAVE BEEN REJECTED"). We affirm the Court of Appeals' holding that "the district court was correct in reading UM/UIM coverage at the liability limits into the policies." *Jordan*, No. 28,638, slip op. at 10.

{33}    In *Romero v. Progressive*, none of the requirements for a valid rejection of UM/UIM coverage were met. The record contains no evidence that Progressive offered Romero UM/UIM coverage equal to his liability limits, that Progressive informed Romero how much UM/UIM coverage would cost, or that Romero rejected UM/UIM coverage in writing. Although the declarations pages delivered to the Romeros listed the amounts of liability and

---

[2]Although a signed written rejection is not required, *see Marckstadt*, 2010-NMSC-001, ¶ 24, a signature is one way to meet the writing requirement.

12

UM/UIM coverage provided by the policy, Progressive should have expressly stated in the policy that higher levels of UM/UIM coverage had been rejected. We agree with the Court of Appeals that "the district court was correct in reading [UM/UIM] coverage at the liability limits into the Policy." *Romero v. Progressive*, 2010-NMCA-024, ¶ 39.

{34} The rejection of UM/UIM coverage in *Lucero v. Trujillo* also was invalid. Progressive Halcyon's website offered UM/UIM coverage equal to the liability limits by setting the default amount of UM/UIM coverage equal to the amount of liability coverage. Additionally, it appears from the record that the pull-down menus on Progressive Halcyon's website did provide price quotations for each available coverage option. We conclude that Diana Lucero rejected coverage in writing, recognizing that in the twenty-first century actively selecting an amount of UM/UIM coverage on an insurance website constitutes a "writing." *See Marckstadt*, 2010-NMSC-001, ¶ 24 (quoting Black's Law Dictionary 1748 (9th ed. 2009) (defining "'writing' as '[a]ny intentional recording of words that may be viewed or heard with or without mechanical aids'")).

{35} Despite Progressive Halcyon's commendable system of offering meaningful choices to its insureds, full compliance with the requirements of the law was not achieved because the rejection was never made a part of Diana Lucero's written policy. Progressive points to the short paragraph at the end of its forty-nine page fine-print policy, which "expressly integrated" the insured's application and declarations pages into the policy. Incorporating an on-line application into an insurance policy via buried language toward the end of a generic forty-nine page policy does not allow for meaningful reconsideration of the decision to reject coverage. Insureds are "only bound to make such examination of such documents as would be reasonable . . . under the circumstances." *Pribble v. Aetna Life Ins. Co.*, 84 N.M. 211, 216, 501 P.2d 255, 260 (1972). Nothing in the application, declarations pages, or policy provided Diana Lucero evidence of her rejection for later reference or reflection. Furthermore, it is not established in the record before us whether Progressive Halcyon actually delivered the policy and declarations pages to the insured. Progressive Halcyon should have delivered a policy that expressly alerted Ms. Lucero to the fact that she had rejected a portion of the UM/UIM coverage to which she was entitled. We conclude that Diana Lucero's rejection was not "endorsed, attached, stamped or otherwise made a part of the policy" as required by 13.12.3.9 NMAC, and accordingly we affirm the Court of Appeals. *See Lucero*, No. 29,859, slip op. at 2.

## III. CONCLUSION

{36} We affirm the Court of Appeals' holdings that the insurers in these consolidated cases failed to obtain valid rejections of UM/UIM coverage and that the proper remedy in each of these cases is reformation of Plaintiffs' automobile liability policies to provide UM/UIM coverage equal to the liability limits.

{37} **IT IS SO ORDERED.**

_____

**CHARLES W. DANIELS, Chief Justice**

WE CONCUR:

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _Jordan v. Allstate_, Docket No. 32,063, _Romero v. Progressive_, Docket No. 32,065, and _Lucero v. Trujillo_, Docket No. 32,213**

| **IN** | **INSURANCE** |
|--------|---------------|
| IN-CV | Coverage |
| IN-GL | General Liability Insurance |
| IN-RI | Regulation of Insurance |
| IN-UM | Uninsured or Underinsured Motorist |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-PA | Prospective Application |
| CP-RT | Retroactivity |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |