**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 19, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FEDERATED SERVICE INSURANCE
COMPANY, a Minnesota corporation,

      Plaintiff-Counter-Defendant–
      Appellee,

v.

DANNY MARTINEZ,

      Defendant-Counter-Claimant–
      Appellant.

No. 11-2183
(D.C. No. 1:06-CV-00638-JAP-WDS)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HOLMES**, Circuit Judges, and **BRIMMER**,[**] District Judge.

On May 11, 2005, Danny Martinez was working on the premises of his employer,

Capitol Motor Company ("Capitol"), when he was struck by a car driven by an uninsured

motorist. He and Capitol's insurer, Federated Service Insurance Company ("Federated"),

dispute whether Federated is required to pay uninsured/underinsured motorist

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

[**] Honorable Philip A. Brimmer, U.S. District Judge, District of Colorado, sitting by designation.

("UM/UIM") benefits to Martinez under Capitol's insurance policy.

In this case's prior appearance before this court, we reversed a grant of summary judgment in favor of Federated, concluding that Capitol had not validly rejected UM/UIM insurance for non-management employees like Martinez. Federated Serv. Ins. Co. v. Martinez, 385 F. App'x 845, 846-47 (10th Cir. 2010) (unpublished). On remand, the district court granted summary judgment in favor of Federated after determining that Martinez was covered for UM/UIM purposes only if occupying a vehicle covered by the policy at the time of the accident; Martinez admits he was not. Martinez appeals for a second time. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

## I

Under the "Garage Coverage" section of Capitol's policy in effect at the time of Martinez's May 2005 accident, Federated agreed to pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' other than the ownership, maintenance or use of covered 'autos.'" Under the header "Who Is An Insured," the policy provides that "employees . . . while acting within the scope of their duties" are "'insureds' for 'garage operations' other than covered 'autos.'"

The policy initially provided UM/UIM coverage to any person who qualified as an insured. However, an endorsement with an effective date of March 1, 2005 rejects UM/UIM coverage for insureds other than officers, directors, partners, or owners of Capitol and their family members. A related endorsement, also with an effective date of

March 1, 2005, sets forth the terms of UM/UIM coverage. It states that "the provisions of the Coverage Form apply unless modified by the endorsement." The endorsement provides that "[a]nyone other than a Class 1 'insured'" is covered "while 'occupying' a covered 'auto.'" Employees are included within the definition of "[a]nyone other than a Class 1 'insured.'"

After his accident, Martinez asserted a claim under the policy. Federated denied the claim and filed a declaratory judgment action to determine whether it was required to pay UM/UIM benefits to Martinez. In its complaint, Federated alleged that UM/UIM "coverage was declined or rejected for employees of Capitol Motor Company as set forth" in the UM/UIM "Limit of Insurance" endorsement. Federated also claimed generally that "[o]ther provisions and conditions of the Federated policy may [] preclude uninsured or underinsured coverage for Mr. Martinez."

Both parties filed motions for summary judgment on the issue of whether Capitol had validly rejected UM/UIM coverage for non-management employees. Concluding that coverage had been validly rejected, the district court granted summary judgment to Federated. Martinez appealed to this court. We certified the following question to the New Mexico Supreme Court: "For a valid rejection of UM/UIM coverage under New Mexico law, must that rejection be written, signed by the insured, and attached to the policy?" Federated Serv. Ins. Co. v. Martinez, 300 F. App'x 618, 618-19 (10th Cir. 2008) (unpublished).

In response, the New Mexico Supreme Court concluded that "an insurer must

obtain a written rejection of UM/UIM coverage from the insured in order to exclude it from an automobile liability insurance policy." Marckstadt v. Lockheed Martin Corp., 228 P.3d 462, 464 (N.M. 2009). In Martinez's case, the court noted that "it appears undisputed that the policy provided some liability coverage for the injured employee," and that it was "uncontested that Capitol intended to reject [UM/UIM] coverage." Id. at 466. However, the state court ruled that "the question of the intent to include or not to include the third-party beneficiaries in UM/UIM coverage is irrelevant because the issue is whether the rejection, if any, conformed with the requirements of the statute and the regulation." Id. at 472.

Because the March 1, 2005 endorsement did not fulfill statutory requirements for rejection, we held that Capitol had not validly rejected UM/UIM insurance. Martinez, 385 F. App'x at 846-47. We accordingly reversed the grant of summary judgment in favor of Federated and remanded for proceedings not inconsistent with our order and judgment. Id. at 849-50.

On remand, the district court granted partial summary judgment to Martinez. Federated moved for reconsideration, contending the prior proceedings established only that Capitol did not effectively reject UM/UIM coverage for non-management employees, but did not decide whether Martinez's injuries were eligible for UM/UIM coverage, whether and how Martinez might be entitled to stack coverage, or the extent of Martinez's damages. The district court granted Federated's motion for reconsideration.

After further briefing, the district court granted summary judgment in favor of

Federated. It concluded that Martinez, as an employee of Capitol, was covered for UM/UIM purposes only if he was occupying a vehicle covered by the policy. Because Martinez was not occupying a covered vehicle at the time of his injury, the district court concluded he was not entitled to UM/UIM insurance. Martinez timely appealed.

## II

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A decision granting summary judgment presents a question of law that we review de novo. See Wallace v. Microsoft Corp., 596 F.3d 703, 707 (10th Cir. 2010).

The parties agree that New Mexico law governs this dispute. If a state's highest court has not addressed a dispositive legal issue, a federal court "must determine what decision the state court would make if faced with the same facts and issues" by considering state intermediate appellate court decisions, "decisions of other states, federal decisions, and the general weight and trend of authority." Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir. 1988). "[W]e review the district court's determination of state law de novo . . . ." Butler v. Union Pac. R.R. Co., 68 F.3d 378, 379 (10th Cir. 1995) (italics omitted).

## A

By statute, every New Mexico automobile liability insurance policy is required to insure against damages from uninsured or underinsured motorists unless such coverage is

rejected in writing by the insured. See N.M. Stat. § 66-5-301; N.M. Admin. Code § 13.12.3.9. "Section 66-5-301[] embodies a public policy of New Mexico to make uninsured motorist coverage a part of every automobile liability insurance policy issued in this state, with certain limited exceptions." Romero v. Dairyland Ins. Co., 803 P.2d 243, 245 (N.M. 1990); accord Marckstadt, 228 P.3d at 468-69 ("Section 66-5-301 and [N.M. Admin. Code § 13.12.3.9] were designed to expand insurance coverage to protect the public from damage or injury caused by other motorists who were not insured and could not make the impaired party whole." (quotation omitted)).

In a pair of recent cases, Progressive Northwestern Insurance Co. v. Weed Warrior Services, 245 P.3d 1209 (N.M. 2010), and Jordan v. Allstate Insurance Co., 245 P.3d 1214 (N.M. 2010), the New Mexico Supreme Court emphasized that insurers must include UM/UIM coverage in all policies unless it is explicitly rejected. The court noted that in interpreting § 66-5-301, New Mexico courts have "long applied a qualitatively different analysis than [they] use when construing many other types of statutes and insurance policies." Jordan, 245 P.3d at 1219. The statute "must be construed liberally" because it is remedial in nature. Weed Warrior, 245 P.3d at 1213. In both cases, the New Mexico Supreme Court interpreted § 66-5-301 expansively, clarifying that it "requires an insurer to offer UM/UIM coverage in an amount equal to the liability limits of the policy," Weed Warrior, 245 P.3d at 1214, and "[t]he provision of the maximum possible amount of UM/UIM coverage in every insurance policy is the default rule, and any exception to that rule must be construed strictly to protect the insured," Jordan, 245

-6-

P.3d at 1219 (quotation omitted). In particular, the court held "that the choice of the insured to purchase any lower amount [of UM/UIM coverage] functions as a rejection of that maximum amount of coverage statutorily possible," Weed Warrior, 245 P.3d at 1214, and thus such choices must comply with the stringent requirements for a valid rejection.

Similarly, in the prior appeal of this case, the New Mexico Supreme Court answered our certified question by concluding that UM/UIM coverage will be read into a policy unless the requirements for rejecting UM/UIM coverage are "strictly met." Marckstadt, 228 P.3d at 468. The court rejected the insurers' assertion that the intent of the parties was dispositive, distinguishing a prior case, Jaramillo v. Providence Washington Insurance Co., 871 P.2d 1343 (N.M. 1994). In Jaramillo, the New Mexico Supreme Court held that "if the premium-paying insured and insurer agree that [a] third party was not intended to be included under the provision allowing stacking, their understanding should control." Marckstadt, 228 P.3d at 472 (citing Jaramillo, 871 P.2d at 1348). The Marckstadt opinion explained:

> The case before us is distinguishable from Jaramillo. Here, there is no dispute that Appellants were the intended beneficiaries of liability coverage under their employers' policies. The only dispute is whether this coverage included UM/UIM coverage. Unlike the availability of policy stacking in Jaramillo, the question of the presence of UM/UIM coverage under an automobile liability policy is not a question of intent. Section 66-5-301 and [N.M. Admin. Code § 13.12.3.9] provide that automobile liability policies shall contain UM/UIM coverage in the absence of an appropriate rejection, irrespective of the parties' intent. Appellants recognize this principle and argue that rejection was ineffective, and therefore, as a matter of law, their coverage includes UM/UIM coverage. Unlike Jaramillo, in which the

-7-

central question of the case had to be settled by referring to the parties' intent in signing the contract, here, the question of the intent to include or not to include the third-party beneficiaries in UM/UIM coverage is irrelevant because the issue is whether the rejection, if any, conformed with the requirements of the statute and the regulation.

Marckstadt, 228 P.3d at 472 (citation omitted).

**B**

In determining that the policy at issue provided UM/UIM coverage only when occupying a covered auto, the district court relied on an endorsement restricting the scope of UM/UIM coverage. We conclude that this was error.

As the prior proceedings in this case established, Federated failed to obtain an effective rejection of UM/UIM coverage from Capitol. Federated Serv. Ins. Co., 385 F. App'x at 849 ("[W]e conclude that Capitol Motor did not reject UM coverage for non-management employees."). Under these circumstances, New Mexico law requires that we "reform the polic[y] to provide UM/UIM coverage equal to the liability limits." Jordan, 245 P.3d at 1217. In reforming the policy, we look to the liability coverage portion of the policy to determine the scope of UM/UIM coverage.

Under the "Garage Coverage" section of the policy,[1] Federated covers "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage'

---

[1] Garage coverage "has a dual character," providing insurance for both "automobile liability risk" as well as "non-automobile risk" occurring at the "garage location." 2-11 Law of Liability Insurance § 11.02. Federated conceded before the district court that the Garage Coverage portion of the policy "sets out the terms of the liability coverage available to Capitol Motor."

-8-

to which this insurance applies caused by an 'accident' and resulting from 'garage operations' other than the ownership, maintenance or use of covered 'autos.'" And the policy states that "employees" are "insureds" for "'garage operations' other than covered 'autos'" while they are "acting within the scope of their duties." Accordingly, Martinez would have liability coverage under the policy for the accident at issue: he was an employee acting within the scope of his duties when an accident occurred, and the accident resulted from "'garage operations' other than the ownership, maintenance or use of covered 'autos.'" The New Mexico Supreme Court acknowledged that "there is no dispute that Appellants were the intended beneficiaries of liability coverage under their employers' policies." Marckstadt, 228 P.3d at 472.

Because Martinez was an insured for liability purposes under the circumstances presented, and because Federated did not obtain a valid rejection of UM/UIM coverage, the policy must be reformed to provide UM/UIM coverage "equal to the liability limits." Jordan, 245 P.3d at 1217. We construe this rule as requiring UM/UIM coverage for accidents in which an insured would have been covered for liability purposes. As the New Mexico Supreme Court has held, "[t]he provision of the maximum possible amount of UM/UIM coverage in every insurance policy is the default rule, and any exception to that rule must be construed strictly to protect the insured." Id. at 1219 (quotation omitted). Accordingly, "the requirements for a valid rejection found in [N.M. Admin. Code § 13.12.3.9] must be complied with when an insured purchases some UM/UIM coverage but rejects UM/UIM coverage equal to the liability limits, because any other

outcome would create an unprincipled anomaly in the fabric of our law." Id. at 1220.

Looking to the liability portion of a policy to determine the extent of UM/UIM coverage most often occurs with respect to coverage limits. In both Jordan and Weed Warrior, the issue was whether an insurance policy should be reformed such that an insured recovered the same amount under the liability and UM/UIM provisions; it was not disputed that the plaintiffs in those cases were insured for UM/UIM purposes. See Jordan 245 P.3d at 1217-18; Weed Warrior, 245 P.3d at 1210, 1214. In contrast, this appeal concerns the scope of risk Federated agreed to insure under the UM/UIM provision, not the UM/UIM liability limits.

However, we read the broad language of Jordan and Weed Warrior as applying beyond the question of coverage limits. See Jordan, 245 P.3d at 1219 (New Mexico courts have "liberally interpreted" the UM/UIM provisions to afford "the maximum possible amount of UM/UIM coverage in every insurance policy"); Weed Warrior, 245 P.3d at 1213 (New Mexico's UM/UIM statute must be "construed liberally"); cf. Marckstadt, 228 P.3d at 468-69. Similarly, in State Farm Mutual Automobile Insurance Co. v. Marquez, 28 P.3d 1132 (N.M. Ct. App. 2001), the New Mexico Court of Appeals reformed UM/UIM coverage in a manner that did not involve the amount recoverable under the policy. In Marquez, the court held that a territorial restriction on UM/UIM coverage was invalid, and read into the policy the broader territorial coverage contained in the liability portion of the policy. Id. at 1134. The court concluded that "the legislature intended for uninsured motorist coverage to apply in the same amounts and in

the same territory as a particular policy provides for liability coverage." Id.

> Given that the purpose of Section 66-5-301 is to protect an insured as if the uninsured motorist had liability coverage, and that the amount of uninsured motorist coverage depends on the amount of liability coverage, we conclude that the legislature also intended that the geographical scope of uninsured motorist coverage depends on and must be equal to the scope of liability coverage.

Marquez, 28 P.3d at 1134 (citation omitted). A federal district court decision reads

Marquez as "firmly establishing that liability coverage sets the parameters of UM

coverage." Farm Bureau Mut. Ins. Co. v. Jameson, 472 F. Supp. 2d 1272, 1282 (D.N.M.

2006) (cited favorably by Weed Warrior, 245 P.3d at 1211). We agree with this reading.

Additionally, other states have construed statutes similar to New Mexico's

UM/UIM law as defining the class of persons to whom UM/UIM motorist coverage

extends or must be offered. See, e.g., Georgeson v. Fid. & Guar. Ins. Co., 48 F. Supp. 2d

1262, 1265 (D. Mont. 1998) (noting that under Montana's uninsured motorist coverage

statute, an automobile insurer must offer uninsured motorist coverage to a class of

insureds that is coextensive with the class covered by policy's liability provision); Aetna

Cas. & Sur. Co. v. McMichael, 906 P.2d 92, 96 (Colo. 1995) (holding that Colorado's

UM/UIM motorist statute requires insurers "to offer UM/UIM coverage to a class as

extensive as the class covered under the liability provision of an automobile insurance

policy"); Allied Mut. Ins. Co. v. Action Elec. Co., 593 N.W.2d 275, 280 (Neb. 1999)

(concluding that under Nebraska law, an insurer must provide UM/UIM coverage to any

person or class of persons with liability coverage). Like the statutes at issue in those

cases, the New Mexico statute mandates that UM/UIM coverage be provided "for the protection of persons insured" under a "motor vehicle or automobile liability policy," N.M. Stat. § 66-5-301, subject in New Mexico's case to written rejection by the insured, Marckstadt, 228 P.3d at 468-69. This language further supports our conclusion that a policy should be reformed to include those covered for liability purposes in the absence of a valid UM/UIM rejection.

In this case, the district court cited to Rehders v. Allstate Ins. Co., 135 P.3d 237 (N.M. Ct. App. 2006), as support for its reliance on the UM/UIM endorsement. But Rehders did not concern an ineffective rejection of UM/UIM coverage, and the injured plaintiff was not an insured under either the UM/UIM endorsement or the liability provision of the policy. See id. at 239-40. Because Martinez qualifies as an insured under the Garage Coverage portion of the policy "for 'garage operations' other than covered 'autos,'" the policy must be reformed to provide him UM/UIM coverage for this accident.

Federated argues that extending UM/UIM coverage to Martinez is unwarranted because neither Federated nor Capitol intended to provide such coverage. However, the New Mexico Supreme Court has expressly concluded that "the question of the presence of UM/UIM coverage under an automobile liability policy is not a question of intent." Marckstadt, 228 P.3d at 472. Federated also contends that the policy should not be reformed because the New Mexico statute does not require UM/UIM coverage for employees of a named insured. But the New Mexico courts have consistently rejected

-12-

the theory that UM/UIM coverage is read into a policy only to the extent minimally required by statute.  See Weed Warrior, 245 P.3d at 1212 (concluding that insurers must offer "the maximum amount of UM/UIM coverage permitted by the statute, e.g., the liability limits of the policy" rather than "the minimum amount"); Romero v. Progressive Nw. Ins. Co., 230 P.3d 844, 849 (N.M. Ct. App. 2009) ("The lack of a requirement that a policy contain UM/UIM coverage in a specific amount does not obviate the statute's unambiguous requirement that insurers must offer UM/UIM coverage and that they must offer such coverage at a level equal to the liability limits of the policy."); see also Jordan, 245 P.3d at 1220 ("[T]he requirements for a valid rejection found in [N.M. Admin. Code § 13.12.3.9] must be complied with when an insured purchases some UM/UIM coverage but rejects UM/UIM coverage equal to the liability limits, because any other outcome would create an unprincipled anomaly in the fabric of our law.").  Given the lack of a valid rejection, Martinez must be provided UM/UIM coverage "equal to the liability limits." Jordan, 245 P.3d at 1217.[2]

### III

For the foregoing reasons, we **REVERSE** the district court's order granting

---

[2] On appeal, Martinez also contends that the district court committed reversible error by allowing Federated to raise new theories and arguments on remand.  Because we conclude that the district court erred in determining that Martinez was not entitled to UM/UIM coverage, we need not review the district court's decision to allow Federated to raise new arguments.  Although we express no opinion on this issue, we remind the parties of their weighty responsibility to argue in the alternative and safeguard court resources.

summary judgment in favor of Federated and **REMAND** for additional proceedings not inconsistent with this order and judgment.

Entered for the Court

Carlos F. Lucero
Circuit Judge