FRY, Judge (dissenting). {32} I respectfully dissent. In my view, the line of Supreme Court cases addressing the acceptable method of rejecting full UM/UIM coverage, culminating in Jordan, compels the conclusion that information regarding UM/UIM coverages and corresponding premiums must be listed in the policy — not necessarily in the rejection form — provided to the insured. Our Supreme Court in Jordan made it clear that one of the four prerequisites to valid rejection of full UM/UIM coverage is that the insurer “inform the insured about premium costs corresponding to the available levels of coverage.” 2010-NMSC-051, ¶ 22. The question presented by the present case is how that information must be conveyed to the insured. The Majority limits its discussion to whether this information must be provided on the written rejection form and concludes that providing this information prior to the purchase of insurance was sufficient for purposes of validly rejecting UM/UIM coverage equal to the limits of liability coverage. Majority Opinion ¶¶ 6,. 30. {33} I have two primary disagreements with the Majority’s approach in this case. First, I do not agree with the Majority’s conclusion that providing a UM/UIM coverage/premium menu at any time prior to the insured’s rejection of maximum available coverage constitutes compliance with Jordan’s requirements. I think Jordan requires the insurer to provide this menu with the policy at the same time it transmits the insured’s written rejection. Second, I do not agree that we should limit our analysis to the question of whether the coverage/premium menu must be part of the insured’s written rejection form. Under our notice pleading standard, Plaintiffs’ complaint sufficiently alerted Defendant to their claim that the absence of a coverage/premium menu from the delivered policy established an invalid waiver ofUM/UIM coverage. The Manner in Which UM/UIM Coverages and Premiums Must Be Disclosed {34} Based on its limited view of Plaintiffs’ complaint, the Majority concludes that Plaintiffs validly rejected UM/UIM coverage equal to the limits of their liability coverage. The question astheMajority frames it is whether the menu ofUM/UIM coverages and corresponding premiums had to be provided in the written form rejecting UM/UIM coverage equal to the policy’s liability coverage. The Majority states that Jordan did not “prescribe any one particular way the information must be provided.” Majority Opinion ¶ 24. And, in its discussion of the Lucero case that was consolidated with Jordan, the Majority appears to determine that pull-down menus on an insurer’s website, which were accessed by the insured prior to her purchase of UM/UIM coverage, “were acceptable.” Majority Opinion ¶ 22. Thus, in the Majority’s view, if an insurer provides a coverage/premium menu at any time prior to the purchase ofUM/UIM coverage, one of the four prerequisites to valid rejection of maximum coverage is satisfied. {35} My difficulty with the Majority’s view stems from the message I glean from Jordan and the line of UM/UIM cases preceding Jordan. I believe the Supreme Court has made it clear that an insurer must provide an insured the opportunity to reconsider his or her rejection of maximum available UM/UIM coverage after the policy is delivered. The only meaningful way to allow reconsideration is to present the insured with all of the pertinent information surrounding rejection when the policy is delivered, and this includes a list ofUM/UIM coverages and corresponding premiums. {36} That the coverages and premiums must be provided as part of the policy is apparent from the Court’s discussion in Jordan. The Court consistently referred to the need to “[i]ncorporat[e] the rejection into the policy [in order to] keep[] the insured well-informed about the decision to reject coverage and [to] allow[] the insured to reconsider his or her rejection after further reflection, consultation with other individuals, or after merely having an opportunity to review one’s policy at home.” Jordan, 2010-NMSC-051, ¶ 18 (emphasis added) (internal quotation marks and citation omitted). More significantly, the Court stated that “[providing the insured with a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision about the level of UM/UIM coverage he or she wants to purchase.” Id. ¶ 21. It is hard to understand how an insured could meaningfully reconsider his or her rejection ofUM/UIM coverage if the menu of coverages and premiums is not included in the policy. Cost is obviously an important part of the insured’s decision to reject. See id. ¶ 22 (stating that rejection is ineffective unless the insurer “incorporatefs] that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject”). And it seems clear that the Supreme Court anticipated that this menu would be part of the policy when it stated, “By requiring insurance carriers to list premium costs corresponding to each available UM/UIM coverage level, we are providing specific guidance concerning the form and manner that valid offers and rejections of UM/UIM insurance must take to comply with controlling statutory and regulatory provisions.” Id. ¶ 25 (emphasis added). {37} I am also not persuaded by the Majority’s view that requiring the policy to include UM/UIM coverage and premium options is inconsistent with the Jordan Court’s holdings in the other consolidated cases addressed in Jordan. Majority Opinion ¶ 19. Nothing in the Jordan Court’s discussion about the Romero or Lucero policies contradicts a requirement for including these options in the policy. Instead, the Court simply noted that neither policy satisfied the requirements for a valid rejection for a variety of reasons. In addition, I do not agree that the Court concluded that the pull-down menus in the Lucero situation were “sufficient to satisfy the requirement.” Majority Opinion ¶ 22. The Jordan Court stated that “[djespite [the insurer’s] commendable system of offering meaningful choices to its insureds, full compliance with the requirements of the law was not achieved because the rejection was never made a part of Diana Lucero’s written policy.” 2010-NMSC-051, ¶ 35 (emphasis added). I do not read this as stating that the only missing requirement was inclusion of Lucero’s written rejection as part of the policy. Instead, I read it as stating that a valid rejection must be made part of the policy and that the policy must “provide] the insured] evidence of her rejection for later reference or reflection.” Id. I do not see how the insured could meaningfully reflect about rej ection without being provided with a menu of coverages and premiums. Such reflection would be made in a vacuum if the menu were not available for the insured to consult. {38} All of this is not to say that the menu of UM/UIM coverages and premiums must be part of the rejection form itself. Instead, I think Jordan tells us that the menu must be provided in the policy along with the rejection form in order to give the insured a chance to reconsider the rejection. This brings me to my second disagreement with the Majority. The Complaint’s Claims Are Not Limited to Deficiencies in the Rejection Form {39} I further disagree with the Majority’s conclusion that we should read Plaintiffs’ complaint as asserting only the specific claim that UM/UIM coverage/premium information must be included in the rejection form. Majority Opinion ¶ 6. New Mexico adheres to the principles of notice pleading, which require “only that the plaintiff allege facts sufficient to put the defendant on notice of his claims.” Madrid v. Village of Chama, 2012-NMCA-071, ¶ 17, 283 P.3d 871. The complaint in this case provided adequate notice of Plaintiffs’ claims. The complaint alleged: A rejection of UM/UIM coverage equal to the liability limits in an automobile insurance policy must be made in writing and must be made part of the insurance policy that is delivered to the insured.... In order to honor these requirements effectively, insurers mustprovide the insured with the premium charges corresponding to each available option for UM/UIM coverage so that the insured can make a knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled. While other paragraphs in the complaint contained allegations suggesting that the coverage waiver itself must contain the coverage/premium information, I think the overall thrust of the complaint sufficed to inform Defendant that Plaintiffs claimed they should have been provided this information when they were provided with their rejection form as part of their policy. {40} In the context of a motion to dismiss for failure to state a claim, our case law does not require a plaintiff in his or her complaint to use specific language or to establish the likelihood of success on the merits. See Madrid, 2012-NMCA-071, ¶ 17 (explaining that “our appellate courts have never required trial courts to consider the merits of a plaintiffs allegations when deciding a motion to dismiss, and we see no justification for requiring such technical forms of pleadings now”). Instead, in considering a motion to dismiss under Rule 1-012(B)(6), a court tests “the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true.” Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 2, 134 N.M. 43, 73 P.3d 181 (internal quotation marks and citation omitted). “Dismissal under Rule 1-012(B)(6) is appropriate only if the non-moving party is not entitled to recover under any theory of the facts alleged in their complaint.” Madrid, 2012-NMCA-071, ¶ 18 (internal quotation marks and citation omitted). The court “resolve[s] all doubts in favor of sufficiency of the complaint.” Id. (internal quotation marks and citation omitted). “The purpose of our rule is to test the law of the claim, not the facts that support it.” Id. (internal quotation marks and citation omitted). {41} Plaintiffs’ complaint provided notice that the UM/UIM coverage/premium menu was not provided in a way meaningful to an intelligent rejection of maximum available UM/UMI coverage. One meaningful way to provide the information is to include it in the policy. We do not know if the policy provided this information because the policy is not in the record., and there is nothing else in the record shedding light on the matter. As a result, whether the policy provided this information is a matter for proof introduced in the district court, not a matter for determination in the context of a Rule 1-012(B)(6) motion. {42} Given my analysis of the holdings in Jordan, Plaintiffs’ complaint states a claim supportable by the law. That claim is that Defendant was required and failed to provide Plaintiffs information on UM/UIM coverages and premiums at the same time that it provided them with the written rejection form in order to establish that Plaintiffs had validly rejected UM/UIM coverage equal to their liability coverage. In my view, the district court erroneously dismissed Plaintiffs’ legally supportable claim, and its judgment should be reversed. If, on remand, Defendant can prove that it provided the coverage/premium menu with the policy and the rejection form, then Defendant should prevail on the merits. Because the Majority disagrees, I respectfully dissent. CYNTHIA A. FRY, Judge