**Certiorari Granted, November 15, 2013, No. 34,363**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2013-NMCA-112**

**Filing Date:  September 23, 2013**

**Docket No. 31,899**

**ALLEN PIELHAU and DESIRI PIELHAU,**
**Individually and as Personal Representatives**
**of the Estate of JARED PIELHAU, their**
**deceased son,**

       **Plaintiffs-Appellees,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

The Law Offices of James A. Branch, Jr., L.L.C.
James A. Branch
Albuquerque, NM

for Appellees

Guebert Bruckner P.C.
Terry R. Guebert
Albuquerque, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

**{1}**      In the companion cases of *Jordan v. Allstate Insurance Co.*, 2010-NMSC-051,  149

1

N.M. 162, 245 P.3d 1214 and *Progressive Northwestern Insurance Co. v. Weed Warrior Services*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209, our Supreme Court set detailed and mandatory procedures to be followed in order for an insured's rejection of uninsured motorist (UM) coverage to be effective. In *Jordan*, our Supreme Court held that its ruling—and thus the procedure described in the two cases—would be given full retroactive effect. 2010-NMSC-051, ¶ 29. In 2011, relying on *Jordan* and *Weed Warrior*, the Plaintiffs Pielhau sought UM coverage equal to the liability limits they carried on three vehicles they owned when their son died in an auto accident. The district court granted the Pielhaus' motion for summary judgment on the UM coverage issue.

**{2}** The dispositive issue is whether the Pielhaus' current action is barred by concepts of claim preclusion as a result of litigation they pursued against State Farm in 2004 arising out of the same tragic accident. Concluding that claim preclusion does apply, we reverse.

**BACKGROUND**

**{3}** Jared Pielhau, the Pielhaus' son, died in a single car accident in 2004. The vehicle he was riding in was uninsured. The Pielhaus owned five vehicles, each covered with liability insurance policies issued by State Farm that were in effect at the time of the accident and which covered Jared.

**{4}** In 2004, the Pielhaus sought UM coverage under two of the State Farm policies. The Pielhaus sued State Farm for denying their request to "stack" coverage under two of the policies and also sued State Farm agent Mary Neal for negligent misrepresentation, claiming she failed to properly advise them concerning uninsured/underinsured motorist coverage on each vehicle. The 2004 case was ultimately settled through a "release of claims" between the parties and dismissal with prejudice on motion by the Pielhaus.

**{5}** The Pielhaus' other three vehicles were various Chevrolet models, each covered by a separate State Farm policy. Plaintiffs Pielhau rejected UM coverage under each of the three Chevrolet policies, and so far as the record reveals, the Piehlhaus did not seek to enforce UM coverage as to them in 2004. They first sought UM coverage under the Chevrolet policies in 2011, which request eventually led to this appeal.

**{6}** When State Farm failed to respond to the Pielhaus' 2011 demand for equalized UM coverage within the time specified, the Pielhaus filed suit seeking declaratory judgment, damages for breach of contract, and punitive damages under several tort-based theories. The Pielhaus moved for partial summary judgment on the declaratory judgment and breach of contract claims, arguing that their rejection of UM coverage in the three Chevrolet policies was invalid and the policies should be reformed under *Jordan* and *Weed Warrior*. The district court granted the motion after briefing and a hearing, and the Pielhaus voluntarily dismissed all other claims against State Farm. State Farm timely appealed. Additional facts are provided as pertinent to our discussion.

**DISCUSSION**

**{7}** State Farm makes four arguments on appeal. First, it maintains that the Pielhaus' claims are barred by claim preclusion[1] because they arise from the same transaction as those in the 2004 litigation. Second, it argues that the claims are barred by the prior settlement and release. Third, it contends that the claims are barred because they were filed outside of the policies' six-year time limit for bringing claims.[2] Finally, it vaguely argues that refusal to enforce the contract-based time limit for claims in the policies violates the United States and New Mexico constitutions. Because we find the first argument persuasive and dispositive, we do not reach State Farm's other arguments.

**{8}** The doctrine of claim preclusion "ensures finality, advances judicial economy, and avoids piecemeal litigation." *Bank of Santa Fe v. Marcy Plaza Assocs.*, 2002-NMCA-014, ¶ 14, 131 N.M. 537, 40 P.3d 442. It "applies equally to [bar] all claims arising out of the same transaction, regardless of whether they were raised at the earlier opportunity, as long as they could have been raised." *Chaara v. Lander*, 2002-NMCA-053, ¶ 20, 132 N.M. 175, 45 P.3d 895. "Res judicata applies if three elements are met: (1) a final judgment on the merits in an earlier action, (2) identity of parties or privies in the two suits, and (3) identity of the cause of action in both suits." *Rosette, Inc. v. United States Dep't of the Interior*, 2007-NMCA-136, ¶ 33, 142 N.M. 717, 169 P.3d 704. Because the Pielhaus do not contest the second element—that the parties are identical in the two suits—we focus on the first and third elements. We review the district court's application of claim preclusion de novo. *Moffat v. Branch*, 2005-NMCA-103, ¶ 10, 138 N.M. 224, 118 P.3d 732.

**{9}** We determine that the first element is satisfied. During the hearing on the Pielhaus' motion for partial summary judgment, the district court questioned the Pielhaus' counsel on whether claim preclusion was appropriate:

---

[1]We recognize that the term "res judicata" encompasses both claim and issue preclusion. *See* 18 Wright, Miller & Cooper, *The Terminology of Res Judicata*, Fed. Prac. & Proc. § 4402 (2d ed. 2002). We also acknowledge that sometimes the terms "res judicata" and "claim preclusion" are used interchangeably. For clarity, we use the term "claim preclusion" as much as possible. When used in quotations, the term "res judicata" "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984).

[2]We note that State Farm also asserts that its contractual time limit bars claims in *Whelan v. State Farm Mutual Automobile Insurance Co.*, COA No. 32,343, which was certified to our Supreme Court on August 8, 2013.

3

| District Court: | On the issue of res judicata, . . . I do think [the Pielhaus] have some issue about whether an issue could have been raised in the prior case. But you also—it requires a decision on the merits, and I don't think any of those—that prior case was decided on the merits, was it? |
| --- | --- |
| Pielhaus' Counsel: | No, I don't believe so, Your Honor. |
| District Court: | They were settled. |
| Pielhaus' Counsel: | They were settled and dismissed. And I think for those reasons— |
| District Court: | There may be some issues with the settlement agreement . . . but I honestly don't see how res judicata or collateral estoppel would apply. |

At the end of the hearing, the district court stated, "I'm not deciding the other things about . . . res judicata." Yet the final judgment it entered states that "State Farm's claims that the [Pielhaus'] claims are barred by the doctrines of [r]es [j]udicata and/or [c]ollateral [e]stoppel are denied[.]"

**{10}**   "[A] dismissal with prejudice is an adjudication on the merits for purposes of res judicata." *Hope Cmty. Ditch Ass'n v. N.M. State Eng'r*, 2005-NMCA-002, ¶ 10, 136 N.M. 761, 105 P.3d 314. In *Kirby v. Guardian Life Insurance Company of America*, the Supreme Court stated the reasoning behind this rule:

> A dismissal with prejudice is an adjudication on the merits only to the extent that when a claim has been dismissed with prejudice, the . . . element of *res judicata* (a final valid judgment *on the merits*) will be presumed so as to bar a subsequent suit against the same defendant by the same plaintiff based on the same transaction. If this were otherwise, plaintiffs could simply ignore dismissals and file the same claim as many times as they wished, so long as the claim never progressed to a determination of the substantive issues.

2010-NMSC-014, ¶ 66, 148 N.M. 106, 231 P.3d 87.

**{11}**   We note that this rule applies to preclude *claims* (claim preclusion/res judicata), but not *issues* (issue preclusion/collateral estoppel). *See State ex rel. Martinez v. Kerr-McGee Corp.*, 1995-NMCA-041, ¶ 14, 120 N.M. 118, 898 P.2d 1256 ("[S]ettlements and consent judgments are not normally considered fertile ground for issue preclusion."). This distinction is based on the fact that issue preclusion requires that the issue was "actually litigated" and "necessarily determined" in the first suit, whereas claim preclusion does not

4

so require. *Compare Reeves v. Wimberly*, 1988-NMCA-038, ¶ 8, 107 N.M. 231, 755 P.2d 75 (stating the elements required for issue preclusion, including that "the ultimate facts or issues were actually litigated; and . . . the issue was necessarily determined"), *with Rosette, Inc.*, 2007-NMCA-136, ¶ 33 (stating the elements required for claim preclusion).

**{12}**  Thus, a dismissal of a suit pursuant to settlement of a claim is final and preclusive as to related claims, but not necessarily preclusive of issues that might arise in different suits, unless those issues were actually litigated and judicially decided.  *See Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 27, 125 N.M. 376, 961 P.2d 1283 ("[T]his Court has previously expressed its disfavor of relying on consent judgments for collateral estoppel purposes, given the absence of the requisite litigation and necessary judicial determination of the issues covered by the judgment."); *In re Picacho Hills Util. Co.*, No. 11-13-10742 TL, 2013 WL 1788298 * 3 n.6 (Bankr. D.N.M. Apr. 26, 2013) ("Consent judgments are res judicata in New Mexico.  However, such judgments generally are not entitled to collateral estoppel effect where the issues involved are not actually adjudicated, and [the district] judge's role in signing the judgment is only ministerial." (citations omitted)).

**{13}**  Here, the 2004 case was settled and dismissed with prejudice by agreement of the parties and thus was an "adjudication on the merits" sufficient for claim preclusion to apply. The first element is satisfied.

**{14}**  We next address the remaining element of claim preclusion:  whether the cause of action in the two suits is the same.  "In deciding what constitutes a cause of action for res judicata purposes, we apply the transactional approach from the Restatement (Second) of Judgments [Section] 24."  *Rosette, Inc.*, 2007-NMCA-136, ¶ 33.  Using this approach, we focus on the underlying facts rather than the legal theories relied on in the first action.  *Three Rivers Land Co. v. Maddoux*, 1982-NMSC-111, ¶ 28, 98 N.M. 690, 652 P.2d 240 *overruled on other grounds by Universal Life Church v. Coxon*, 1986-NMSC-086, ¶ 9, 105 N.M. 57, 728 P.2d 467.  "In determining whether claims arise out of the same transaction, we consider the relatedness of the facts, trial convenience, and the parties' expectations."  *Chaara*, 2002-NMCA-053, ¶ 15.  We will consider each of the three factors in turn.

**{15}**  First, the facts underlying both suits are essentially identical.  This identity is not surprising.  The cases arise from the same tragic accident and the insurance policies in force and at issue in each case are perforce the same.  Indeed, many of the facts alleged in the 2004 suit are more or less repeated in the 2011 complaint.  For example, both complaints refer to the fact that in 2004 the Pielhaus owned five vehicles all insured by State Farm.  And both complaints assert aspects of the process which led them to reject UM coverage on the three policies relevant here.  The two suits address the same conduct by the same insurance agent, and all of the relevant conduct occurred within the same time period.  Although there are facts alleged in the 2004 complaint that do not relate to the 2011 complaint, these additional facts do not diminish the substantial overlap in operative facts between the two suits.

**{16}**  The Pielhaus' efforts to distinguish the two suits on the ground that they address

different sets of policies is unavailing. They argue that "[t]he dispute in this case is not whether State Farm failed to correctly increase the requested coverage limits in the one policy for the Altima [as in the 2004 case]; but rather whether the three UM/UIM rejection forms for the Chevrolet policies complied with New Mexico law." Although the circumstances surrounding UM coverage for the Altima and the Chevrolet policies have distinguishing features, the differences are not material because it is the conduct of State Farm and its representative that forms the heart of both complaints, and multiple allegations in both complaints involve State Farm's conduct in handling all of the policies. The Pielhaus' argument is not persuasive because it rests on the different legal theories asserted, rather than the "common nucleus of operative facts." *Rosette, Inc.*, 2007-NMCA-136, ¶ 33 (internal quotation marks and citation omitted); *Three Rivers Land Co.*, 1982-NMSC-111, ¶ 28 ("Different legal theories arising out of a given episode do not create multiple transactions and hence multiple claims." (internal quotation marks and citation omitted)).

**{17}** We turn to the second prong of the transactional test. The relatedness of the underlying facts indicates that they would "form a convenient unit for trial." "In considering whether the facts form a convenient unit for trial, we examine overlap of the witnesses and evidence relevant to the claims in the two lawsuits." *Anaya v. City of Albuquerque*, 1996-NMCA-092, ¶ 14, 122 N.M. 326, 924 P.2d 735. Here, the witnesses in both suits would be the same or substantially similar because both suits involve allegations against State Farm through its agent, Mary Neal, and how it and she handled the Pielhaus' insurance policies. Similarly, the evidence relevant to the allegations of negligent misrepresentation in the 2004 complaint is the same evidence relevant to the negligent misrepresentation claims in the 2011 complaint, and the allegations of noncompliance with the requirements for rejection of UM/UIM coverage in both complaints depend on the same evidence. *Cf. id.* ¶ 15 (stating that the facts would not form a convenient trial unit when the "case[s] involve[d] allegations of conduct by different persons in dissimilar situations and at distinct times").

**{18}** Under the third prong of the transactional test, we examine whether State Farm could have a reasonable expectation that the conclusion of the first suit would preclude later claims. *See id.* ¶ 17 ("Under these circumstances, we cannot say that [the d]efendants had reason to expect that the additional claims raised in this case were precluded by the judgment against [the p]laintiff in the prior lawsuit."); *Bank of Santa Fe*, 2002-NMCA-014, ¶ 21. Given that we have determined that the underlying facts of the two suits overlap substantially, we conclude it would be reasonable for State Farm to expect that resolution of the first suit would preclude any further claims arising from the 2004 accident.

**{19}** We disagree with the Pielhaus' argument that their claims should not be precluded in that they could not have brought the 2011 claims in 2004 because those claims "did not accrue until after the *Jordan* and *Weed Warrior* decisions." It was possible for the Pielhaus to bring their 2011 claims before those cases were decided. As the *Jordan* Court noted, its holding was foreshadowed by "twenty years of UM/UIM jurisprudence." *Jordan*, 2010-NMSC-051, ¶ 27; *see Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 8, 111 N.M. 154, 803 P.2d 243. The Pielhaus' 2011 complaint actually alleges conduct that was addressed as

6

early as 1990 in *Romero*. 1990-NMSC-111, ¶ 8.

**{20}** Even if we assumed without deciding that *Jordan* and *Weed Warrior* announced a new cause of action, a change in law does not prevent application of claim preclusion to bar claims. In *Wolford v. Lasater*, the plaintiff brought tort claims against a sheriff and county commissioners in state court for conduct related to prosecution of her for forgery and embezzlement. 1999-NMCA-024, ¶ 2, 126 N.M. 614, 973 P.2d 866. She also filed these claims and others in federal court. *Id.* The state case was stayed pending completion of the federal action. *Id.* ¶ 3. After resolution of the federal case, the plaintiff sought to amend her state court complaint to include additional claims, including negligent investigation. *Id.* The motion was denied and the state court dismissed the complaint on the ground that the other claims were precluded based on the federal case. *Id.* On appeal, the plaintiff maintained that "claim preclusion does not bar her negligent investigation and malicious abuse of process causes of action because they were recognized during the time her lawsuit in the trial court was stayed." *Id.* ¶ 13. This Court disagreed and held "a change in law does not affect the claim preclusive effect of a judgment. Consequently, the cases decided after the judgment here and relied on by [the p]laintiff in her briefs are inapplicable." *Id.*; *see Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 375 (1940) (claim preclusion applied to bar claims even when the statute under which the first case was decided was subsequently found to be unconstitutional); *Harrington v. Vandalia-Butler Bd. of Educ.*, 649 F.2d 434, 437 (6th Cir. 1981) (A Section 1983 action was barred by claim preclusion even though the plaintiff maintained it was "unavailable" to her in the first action); *Town of Atrisco v. Monohan*, 1952-NMSC-011, ¶ 21, 56 N.M. 70, 240 P.2d 216 ("[I]t is . . . the general rule that res judicata is no defense where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation." (internal quotation marks and citation omitted)); 18 Wright, Miller & Cooper, *Exceptions to Claim Preclusion*, Fed. Prac. & Proc. § 4415 (2d ed. 2002) ("Change in the controlling principles of law ordinarily does not warrant denial of claim preclusion.").

**{21}** The *Harrington* Court provided a rationale for the sometimes harsh effect of applying claim preclusion in spite of a change in law. 649 F.2d at 437. In that case, the Court of Appeals for the Sixth Circuit held that the plaintiff's claims were precluded because, although at the time of the first suit case law held that municipalities were exempt from Section 1983, "Section 1983 was not 'unavailable' to [the plaintiff] when she filed her [first] action." *Id.* Rather, the plaintiff "was free to challenge the validity of [the case law] to the extent that it exempted municipalities from the ambit of [Section] 1983." *Id.* Thus, plaintiffs bear a burden to challenge case law apparently limiting causes of action, rather than rely on others to do so. The *Harrington* court also found that application of claim preclusion when they do not do so is consistent with the interest in finality of judgments in other contexts:

> [I]t is clear that if she had brought the [Section] 1983 claim initially and lost it on the basis of [case law], she would not be entitled to reassert the [Section] 1983 claim in the aftermath of [that case]. She would be bound by the prior judgment on the merits. That prior judgment is no less binding

7

against her here merely because she elected not to advance a [Section] 1983 claim in her first action.

*Id.* at 437-38.

**{22}** Having determined that the dismissal of the 2004 suit was a final order subject to claim preclusion, that the elements of claim preclusion were met, and that any change in law found in *Jordan* and *Weed Warrior* does not limit the preclusive effect of the 2004 suit, we conclude that the Pielhaus are precluded from pursuing the present claims.

**CONCLUSION**

**{23}** The district court's order granting partial summary judgment in favor of the Pielhaus is reversed. Because the Pielhaus' claims are barred by claim preclusion, we remand to the district court for entry of an order dismissing the complaint.

**{24}** **IT IS SO ORDERED**.

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for *Pielhau v. State Farm Mut. Auto. Ins. Co.*, No. 31,899**

**CIVIL PROCEDURE**
Res Judicata
Summary Judgment
Time Limitations

**INSURANCE**
Motor Vehicle Insurance
Stacking
Uninsured or Underinsured Motorist