IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  September 3, 2015

**NO. 34,220**

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH AND FAMILIES**
**DEPARTMENT,**

     Petitioner-Appellant,

v.

**SCOTT C.,**

     Respondent-Appellee,

and

**DAVID H.,**

     Respondent,

**IN THE MATTER OF BRYCE H.,**

     Child.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Kevin R. Sweazea, District Judge**

and

**NO. 34,221 (Consolidated)**

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH AND FAMILIES**
**DEPARTMENT,**

  Petitioner-Appellant,

v.

**SCOTT C.,**

  Respondent-Appellee,

and

**KAREN S. and SCOTT S.,**

  Respondents,

**IN THE MATTER OF RYAN S.,**

  Child.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Kevin R. Sweazea, District Judge**

and

**NO. 33,891 (Consolidated)**

**TIERRA BLANCA RANCH HIGH**
**COUNTRY YOUTH PROGRAM, and**
**SCOTT CHANDLER, individually,**

  Plaintiffs-Appellants,

v.

**STATE OF NEW MEXICO CHILDREN,**
**YOUTH AND FAMILIES DEPARTMENT,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Edmund H. Kase III, District Judge**

Timothy Flynn-O'Brien
Albuquerque, NM

New Mexico Children, Youth and Families Department
Jennifer Saavedra, General Counsel
Santa Fe, NM

for Appellant/Appellee Children, Youth and Families Department

Rodey, Dickason, Sloan, Akin & Robb, P.A.
R. Nelson Franse
Henry M. Bohnhoff
Glenn A. Beard
Matthew M. Beck
Albuquerque, NM

for Appellee/Appellant Scott Chandler and Appellant Tierra Blanca Ranch High Country Youth Program

**OPINION**

**VANZI, Judge.**

{1}     This appeal arises from litigation related to the alleged abuse and neglect of children at the Tierra Blanca Ranch (the Ranch), a facility operated by Scott Chandler for "troubled and at-risk teenagers." In late 2013, the Children, Youth and Families Department (CYFD) investigated reports of abuse and neglect at the Ranch, ultimately initiating nine separate abuse and neglect cases against Chandler. When CYFD learned that the children were no longer in Chandler's custody, it filed notices of voluntary dismissal pursuant to Rule 10-145(A)(1)(a) NMRA, terminating proceedings without prejudice against Chandler in several of the nine cases. CYFD and Chandler then agreed on the record to amend some or all of the dismissals to read "with" as opposed to "without" prejudice. The events that followed are the subject of this consolidated appeal.

{2}     On appeal from a declaratory judgment/writ action in *Tierra Blanca Ranch High Country Youth Program v. Children, Youth & Families Department*, No. D-0721-CV-2013-00107, Chandler challenges, on res judicata (claim preclusion) grounds, CYFD's authority to conduct a Child Protective Services investigation and issue "investigative decisions" against him after agreeing to dismiss him from the abuse and neglect proceedings with prejudice. On appeal from *In re Bryce H.*, No. D-

0721-JQ-2013-06, and *In re Ryan S.*, No. D-0721-JQ-2013-10, CYFD challenges the underlying issue of the district court's jurisdiction to reopen and dismiss with prejudice abuse and neglect cases involving two of the nine children. For the reasons discussed in this Opinion, we affirm the district court's order in *Tierra Blanca Ranch* and reverse the court's orders in *In re Bryce H.* and *In re Ryan S.*

**BACKGROUND**

{3} On September 22, 2013, a fatal rollover involving a Ranch employee and three Ranch youth was reported to CYFD. CYFD and the state police jointly interviewed eleven children, who described prevalent physical and emotional torment at the Ranch, including shackling, forced labor, and the taunting and beating of children by other children and Ranch staff. On October 9, 2013, CYFD filed nine petitions alleging abuse and neglect of children at the Ranch and naming as respondents Chandler and the childrens' parents. Since the children were still believed to be in Chandler's custody when the petitions were filed, CYFD also filed affidavits for ex-parte custody orders with each petition. *See* NMSA 1978, § 32A-4-16(A) (1993) ("At the time a petition is filed or any time thereafter, the . . . court may issue an ex-parte custody order upon a sworn written statement of facts showing probable cause exists to believe that the child is abused or neglected and that custody . . . is necessary."). The nine petitions, involving similar (if not identical) allegations, were inexplicably

assigned to three separate judges, but all ex-parte motions were consistently granted, and legal custody of the children was temporarily awarded to CYFD pending hearings in each case. By statute, the hearings are preliminary matters, separate from the adjudication of abuse and neglect, and are designed only "to determine if the child should remain in . . . [CYFD's] custody pending adjudication." NMSA 1978, § 32A-4-18(A) (2014).

{4} Prior to the first custody hearing—*Charlie L.*—which was scheduled for the morning of October 15, all children were either returned to their parents or placed with CYFD. According to counsel for CYFD, the fact that the children were then "safe and away from the alleged perpetrator" prompted it to prepare notices for the clerk, voluntarily dismissing Chandler without prejudice from the abuse and neglect proceedings pursuant to Rule 10-145(A)(1)(a). Counsel for CYFD specifically believed that "Chandler no longer presented any immediate danger and there was no reason to proceed to a custody hearing or adjudicatory hearing as to him." Thus, a little over an hour before the custody hearing in *Charlie L.*, CYFD filed its notices of voluntary dismissal of Chandler in several of the nine cases, including *In re Bryce H.* and *In re Ryan S.*

{5} Nevertheless, counsel for Chandler attended the *Charlie L.* hearing "to oppose CYFD's actions against Chandler in all nine proceedings, including the findings in

the Ex Parte Custody Orders." Since the hearing was sequestered, CYFD tried to exclude Chandler as a non-party, a discussion ensued, and the court afforded Chandler the opportunity to object to the Rule 10-145(A)(1)(a) notices dismissing him, including the notices that had already been filed with the clerk. In response to Chandler's objection, CYFD agreed on the record that it would dismiss Chandler with prejudice from *In re Charlie L.*, and from at least two other cases before the same judge. The court then ruled that the corresponding ex-parte custody orders would be dissolved as to Chandler, and Chandler's attorney left the sequestered custody hearing, which then went forth as scheduled with respect to Charlie L.'s parents, who remained as respondents. Chandler later submitted proposed orders for CYFD's approval, reflecting dismissals with prejudice in all nine cases. CYFD ultimately approved the proposed orders in seven cases, leaving only the orders in *In re Bryce H.* and *In re Ryan S.* unapproved.

{6} Meanwhile, by December 5, 2013, CYFD had concluded a Child Protective Services investigation, which, as will be discussed below, is an internal administrative reporting and documentation process, designed in part to "assess [the] safety of children who are the subjects of reports of alleged abuse or neglect." 8.10.3.8(A) NMAC. CYFD reached "investigative decisions" substantiating findings that Chandler abused and/or neglected all nine children. In *Tierra Blanca Ranch*,

4

Chandler filed a motion in the district court requesting a declaration that the investigative decisions were barred by the doctrine of claim preclusion since the children's court had already dismissed "the same investigations and allegations" with prejudice pursuant to CYFD's agreement at the October 15 hearing.

{7}     CYFD responded to Chandler's claim preclusion argument by refusing to approve the proposed orders to dismiss the cases involving Bryce H. and Ryan S. with prejudice. Since CYFD had already dismissed the *In re Bryce H.* and *In re Ryan S.* cases (without prejudice) in their entirety—meaning that the parents were no longer respondents either—Chandler moved to reopen the cases for the limited purpose of effectuating CYFD's October 15 agreement to change the dismissals to "with prejudice." CYFD opposed the court's jurisdiction to reopen the cases, arguing that the notices of dismissal immediately "terminate[d] the case without any order by the court" and divested the court of its jurisdiction to take any further action. The court ultimately found that it was "wrong for CYFD to make the aforesaid agreement and then not adhere to it." It reopened the proceedings in *In re Bryce H.* and *In re Ryan S.* and dismissed Chandler with prejudice in both cases. Although all nine cases had been ostensibly dismissed with prejudice, the court in *Tierra Blanca Ranch* declined to apply the doctrine of claim preclusion to CYFD's substantiation investigations.

Appeals of all three cases followed. We consolidated the cases and now affirm in part and reverse in part.

**DISCUSSION**

{8}     Chandler argues that claim preclusion bars CYFD from administratively substantiating and documenting allegations of abuse and neglect against him after he was dismissed with prejudice from proceedings in all nine cases in the children's court. Chandler's argument necessarily encompasses two contentions: first, that CYFD's substantiation investigations constitute "claims" that could have been brought in children's court in the first place; and second, that the underlying dismissals with prejudice in two of the cases—*In re Bryce H.* and *In re Ryan S.*—were appropriately granted over CYFD's objection. We hold that claim preclusion does not apply to any of the substantiation investigations, and we further clarify that the district court was without jurisdiction when it dismissed Chandler from *In re Bryce H.* and *In re Ryan S.* with prejudice.

**A.    Claim Preclusion**

{9}     Whether the elements of claim preclusion are satisfied is a legal question, which we review de novo. *Moffat v. Branch*, 2005-NMCA-103, ¶ 10, 138 N.M. 224, 118 P.3d 732. To the extent our analysis requires us to construe the Children's Code and its implementing regulations, we look to the statutory text as the primary

indicator of legislative intent. *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361. We also interpret each section of the Children's Code "so as to correlate as faultlessly as possible with all other sections, in order that the ends sought to be accomplished by the [L]egislature shall not be thwarted." *State v. Doe*, 1980-NMCA-147, ¶ 4, 95 N.M. 88, 619 P.2d 192.

{10} Claim preclusion "applies equally to bar all claims arising out of the same transaction, regardless of whether they were raised at the earlier opportunity, as long as they could have been raised." *Pielhau v. State Farm Mut. Auto. Ins. Co.*, 2013-NMCA-112, ¶ 8, 314 P.3d 698 (alteration, internal quotation marks, and citation omitted), *cert. granted*, 2013-NMCERT-011, 314 P.3d 963. The doctrine "applies if three elements are met: (1) a final judgment on the merits in an earlier action, (2) identity of parties or privies in the two suits, and (3) identity of the cause of action in both suits." *Id.* (internal quotation marks and citation omitted). In determining whether a cause of action in the two suits is the same, "we consider the relatedness of the facts, trial convenience, and the parties' expectations." *Id.* ¶ 14 (internal quotation marks and citation omitted).

{11} We begin by noting the novelty of analyzing this issue through the lens of claim preclusion. While numerous jurisdictions have similar child abuse substantiation and documentation schemes, we can locate no published or

unpublished opinion anywhere that has ever characterized these non-adversarial internal administrative investigations as claims that can be precluded by parallel judicial proceedings. Along these lines, CYFD has argued throughout this litigation that the substantiation investigations provide no relief and embrace no remedial rights of a plaintiff and are therefore "not claims" subject to preclusion. *See* Restatement (Second) of Judgments § 24 cmt. a (1982) (defining "claim" for preclusion purposes "to embrace all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction"); *cf. In re Mokiligon*, 2005-NMCA-021, ¶ 8, 137 N.M. 22, 106 P.3d 584 (stating that a petition for a name change "does not ask the court to resolve a dispute between parties" and is therefore not subject to claim preclusion). If anything, the Child Protective Services investigation determines an *issue* and is properly analyzed under the doctrine of issue preclusion. *See, e.g.*, *Grant v. Iowa Dep't of Human Servs.*, 722 N.W.2d 169, 173-78 (Iowa 2006) (determining whether issue preclusion applies to an administrative child abuse documentation scheme); *Cosby v. Dep't of Human Res.*, 42 A.3d 596, 598 (Md. 2012) (considering whether adjudication of neglect precludes the same issue in subsequent administrative child

neglect reporting process); *In re P.J.*, 2009 VT 5, ¶¶ 1-3, 9, 185 Vt. 606, 969 A.2d 133 (mem.) (same).[1] But no such argument is before this Court.

{12} Instead, Chandler limits his argument to claim preclusion, contending that the test for identity of claims is "easily satisfied," and that "[i]t is impossible to distinguish the facts underlying the Abuse and Neglect Petitions from the facts underlying the Substantiation Notices." Although that may be true, Chandler never explains how CYFD could have pursued its purported "claim," a substantiation investigation, which is a non-adversarial administrative investigation conducted by a department worker, in an adversarial proceeding in children's court. *See Pielhau*, 2013-NMCA-112, ¶ 8 (stating that claim preclusion "applies . . . to bar all claims arising out of the same transaction . . . *as long as they could have been raised*" in the first action (emphasis added) (alteration, internal quotation marks, and citation omitted)); *State ex rel. Martinez v. Kerr-McGee Corp.*, 1995-NMCA-041, ¶ 11, 120 N.M. 118, 898 P.2d 1256 ("Claims are not precluded . . . where a plaintiff could not seek a certain relief or rely on a certain theory in the first action due to limitations on

---

[1]Even the case cited by Chandler, *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011), involves issue preclusion. Presumably, Chandler is not arguing issue preclusion because, unlike claim preclusion, "on the merits" in an issue preclusion analysis requires that the issue must be "actually litigated." *See Pielhau*, 2013-NMCA-112, ¶¶ 11-12. In other words, Chandler would lose since "[t]he Court did not conduct a merits hearing and make a decision based on such hearing."

9

the subject matter jurisdiction of the first tribunal." (citing Restatement (Second) of Judgments § 26(1)(c) (1980))). "It is clear enough that a litigant should not be penalized for failing to seek unified disposition of matters that could not have been combined in a single proceeding." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4412, at 276 (2d ed. 2002). It is specifically settled that "[m]atters that can be advanced only before an administrative agency ordinarily do not form part of a single claim with matters that can be advanced only before another agency or a court." *Id.* at 279.

{13}    These hornbook propositions are captured in statements of policy underlying the doctrine of claim preclusion that have been consistently articulated by our appellate courts. *See, e.g.*, *Potter v. Pierce*, 2015-NMSC-002, ¶ 1, 342 P.3d 54 (emphasizing that "barring a claim on res judicata grounds requires a determination that the claimant had a full and fair opportunity to litigate the claim in the earlier proceeding"); *Brooks Trucking Co. v. Bull Rogers, Inc.*, 2006-NMCA-025, ¶ 11, 139 N.M. 99, 128 P.3d 1076 ("[A] party's full and fair opportunity to litigate is the essence of res judicata."); *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 81, 134 N.M. 77, 73 P.3d 215 (observing that claim preclusion "reflects the expectation that parties who are given the capacity to present their entire controversies shall in fact do so" (internal quotation marks and citation omitted)); *Moffat v. Branch*, 2002-NMCA-

067, ¶ 26, 132 N.M. 412, 49 P.3d 673 ("If a litigant is able to raise a claim in an action before the action becomes final, but does not do so, the claim is forever barred."); *Bank of Santa Fe v. Marcy Plaza Assocs.*, 2002-NMCA-014, ¶ 20, 131 N.M. 537, 40 P.3d 442 (stating that "two claims cannot be a 'convenient trial unit' when they could not both be presented" in the first tribunal); *Martinez*, 1995-NMCA-041, ¶ 11 ("Claim preclusion bars litigation of claims that were or could have been advanced in an earlier proceeding."). As a general matter, there is simply no reason to apply the doctrine to preclude a claim that could never have been brought in the first instance, and doing so would only serve to unnecessarily infringe on a plaintiff's interest in the vindication of its claims. Thus, to determine whether CYFD could have "substantiated"—as that term is defined in the department's governing regulations—abuse and neglect in the first tribunal (the children's court), we briefly examine the relevant statutes and regulations.

{14}     Abuse and neglect investigations and petitions are governed by the Abuse and Neglect Act, NMSA 1978, §§ 32A-4-1 to -34 (1993, as amended through 2014), and by various regulations in Title 8 of the New Mexico Administrative Code. The plain text of the statutes and regulations give rise to the following scheme: When CYFD receives a report of abuse or neglect, it must "conduct an investigation to determine the best interests of the child with regard to any action to be taken[,]" § 32A-4-4(A),

11

including whether to file an abuse or neglect petition in the children's court, § 32A-4-4(C). After it is filed, the merits of the abuse or neglect petition are adjudicated in an adversarial proceeding where CYFD must prove its case by clear and convincing evidence. Section 32A-4-20(H). A dispositional judgment is ultimately entered, and a treatment plan is ordered in cases where a child is found to be neglected or abused. Section 32A-4-22(C).

{15} In addition to litigating alleged abuse and neglect in children's court, CYFD also maintains a data management system to conform with state and federal reporting requirements. *See* NMSA 1978, § 9-2A-8(C) (2011) (requiring CYFD to "develop and maintain a statewide database, including client tracking of services for children, youth and families"); 8.8.2.25(B) NMAC (requiring CYFD to complete various federal reporting requirements); 42 U.S.C. § 671(a)(20)(B)(i) (2014) (conditioning receipt of certain Title IV funds to a state plan requiring the state to check its child abuse and neglect registry when investigating prospective foster and adoptive parents and to comply with requests from other states); 42 U.S.C. § 16990(a) (2013) (discussing the obligation of the states to supply information to the national registry of substantiated cases of child abuse).

{16} The regulations require a worker from CYFD's division of Child Protective Services to conduct an administrative investigation into any report of abuse or neglect

12

that is screened in and to document into CYFD's data management system whether "credible evidence exists to support the investigation worker's conclusion that the child has been abused or neglected[.]" 8.10.3.17(A)(1) NMAC; 8.10.3.20(A) NMAC (setting forth the documentation requirements). The database of investigation decisions, which includes findings of substantiated and unsubstantiated abuse, is then used in future abuse and neglect investigations, in the screening of foster and adoptive parents and in certain licensing and hiring decisions. *See* 8.10.2.12(B) NMAC (describing use of information received from the reporting source); 8.26.4.11 NMAC (explaining foster and adoptive home licensing requirements); 8.8.2.22 NMAC (describing employee background checks); 8.26.6 NMAC (explaining requirements for licensing facilities). By rule, an aggrieved party can challenge the results of a substantiation investigation only by seeking administrative review and an administrative hearing and only while a judicial proceeding is not pending. 8.10.3.21(B) NMAC. After the administrative determination is final, the appealing party can seek judicial review. 8.8.4.13(A) NMAC.

{17}     Thus, the regulations vest CYFD with the exclusive authority to conduct a substantiation investigation and to document substantiated and unsubstantiated abuse for reporting purposes in its centralized data management system. Only the Child Protective Services "worker" can "complete the investigation . . . and complet[e] all

13

documentation in [the database.]" 8.10.3.17(A) NMAC. Aside from it being entirely unwieldy (i.e., not a "convenient trial unit" in the language of res judicata) to require CYFD to carry out its non-adversarial "credible evidence" investigation and documentation requirements during an adversarial proceeding in children's court, it is also contrary to law. According to the regulations, a court cannot decide whether abuse is substantiated in the first instance; its only role in the administrative process is its legislatively prescribed power of judicial review. 8.8.4.13(A) NMAC; *New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 19, 149 N.M. 42, 243 P.3d 746 ("Judicial action that disrupts the administrative process before it has run its course intrudes on the power of another branch of government.").

{18}     By expressly identifying different decision-makers, different purposes, and different standards of proof, the statutes and regulations appear to contemplate inclusion of substantiated reports in CYFD's child abuse database, even where abuse cannot be proven by clear and convincing evidence in children's court. We think it unlikely that the Legislature intended to strike from the statewide database information related to alleged abuse—documentation that is ultimately designed to be protective of children—every time a related abuse and neglect petition is dismissed pursuant to a higher burden of proof in a contested judicial proceeding, *see Anaya v. City of Albuquerque*, 1996-NMCA-092, ¶ 15, 122 N.M. 326, 924 P.2d 735 (stating

14

that "differences in requirements of proof suggest that the claims advanced in . . . two cases do not form a convenient trial unit"), or every time a petition is dismissed with prejudice for reasons that have nothing to do with the merits of the underlying abuse allegations. For instance, if a respondent to an abuse and neglect petition has no continuing connection with the children (as in this case), CYFD has no reason to continue to pursue a treatment plan in children's court involving that respondent. That does not mean, however, that upon dismissing the petition as to the alleged abuser with prejudice, CYFD is precluded from fulfilling its responsibility to document findings of credible evidence of abuse "in every investigation." 8.10.3.18(A) NMAC. Given the purposes of the substantiation investigation and its documentation requirements, discussed above, applying the common law doctrine of claim preclusion under these circumstances would thwart the designs of the Children's Code and put children who are faced with recurring abuse or neglect at even greater risk of harm. *See In re Mahdjid B.*, 2015-NMSC-003, ¶ 13, 342 P.3d 698 ("The central purpose of the Children's Code is to protect the health and safety of children covered by its provisions while preserving the unity of the family whenever possible." (alteration, internal quotation marks, and citation omitted)).

{19} We conclude that, since CYFD could not have brought its purported "claim" in the first tribunal, and since the statutory/regulatory framework intends to authorize

the documentation of information related to alleged abuse and neglect that is not proven by clear and convincing evidence in court, the doctrine of claim preclusion does not apply. *See Martinez*, 1995-NMCA-041, ¶ 11; Wright, et al., *supra*, § 4412, at 276 ("[A] litigant should not be penalized for failing to seek unified disposition of matters that could not have been combined in a single proceeding."). Therefore, the investigative decisions related to all nine children were not precluded by the previous dismissals in children's court, and Chandler's remedy to challenge those findings, once the judicial proceedings against him were no longer pending, was entirely contained within the procedures outlined in the New Mexico Administrative Code.

**B.      *In re Bryce H.* and *In re Ryan S.***

{20}      We also clarify that the underlying dismissals with prejudice occurred when the district court was without jurisdiction, pursuant to Rule 10-145(A)(1)(a) and *Becenti v. Becenti*, 2004-NMCA-091, ¶ 14, 136 N.M. 124, 94 P.3d 867, and we therefore reverse in *Bryce H.* and *Ryan S*. Our review of the jurisdiction of the children's court is de novo. *State ex rel. Children, Youth & Families Dep't v. Andree G.*, 2007-NMCA-156, ¶ 17, 143 N.M. 195, 174 P.3d 531. We review the children's court rules and statutes de novo, *State v. Dylan A.*, 2007-NMCA-114, ¶ 13, 142 N.M. 467, 166 P.3d 1121, construing them in light of their stated purpose to "secure simplicity in procedure, fairness in administration, elimination of unjustifiable expense and delay

16

and to assure the recognition and enforcement of constitutional and other rights[,]" Rule 10-101(B) NMRA.

**1.      The Jurisdictional Effect of Voluntary Dismissal-By-Notice**

{21}      The children's court rules govern procedure in abuse and neglect proceedings. *See* Rule 10-101(A)(1)(d). By rule, the petitioner in "any action except a delinquency proceeding" has the right to dismiss the action without order of the court "by filing a notice of dismissal at any time before commencement of the adjudicatory hearing[.]" Rule 10-145(A)(1)(a). While the jurisdictional effect of a notice of dismissal in the children's court is an issue of first impression, the text of the rule is similar to its counterparts in the state and federal rules of civil procedure, which have been widely interpreted. In their briefing, the parties appear to assume, with one exception that will be discussed below, that there is no basis to read the applicable children's court rules differently than their similar state and federal rules. We therefore begin by evaluating the jurisdictional effect of a voluntary dismissal under Rule 1-041(A)(1) NMRA and Federal Rule of Civil Procedure 41(a)(1)(A).

{22}      When a case is voluntarily dismissed by notice, a court's jurisdiction is unilaterally and immediately terminated. *Becenti*, 2004-NMCA-091, ¶¶ 10, 14. In *Becenti*, the petitioner filed a pro se divorce action and then wrote a letter to the district court that was later construed as a notice of dismissal. *Id.* ¶ 2. She then filed

17

for divorce in another state, prompting the respondent to move to reopen the New Mexico case over her objection. *Id.* ¶ 3. The district court reinstated the case under Rule 1-041(E)(2) and LR 11-110(B) NMRA, which permit reinstatement upon a showing of good cause. *Becenti*, 2004-NMCA-091, ¶¶ 3, 9. We reversed, construing our dismissal-by-notice provision in light of its federal counterpart, which "has almost universally been interpreted as a bright-line rule permitting unilateral dismissal before an answer or summary judgment motion is filed that is beyond the authority of the trial court to disturb." *Id.* ¶ 10 (internal quotation marks and citation omitted). We cited federal authorities for the proposition that "[t]here is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court." *Id.* (internal quotation marks and citation omitted).

{23}    The respondent in *Becenti* argued that the court "should not be prohibited from exercising its discretion to achieve a different result when it would be equitable to do so." *Id.* ¶ 12. We rejected that argument, reiterating that "the voluntary dismissal rule has consistently been interpreted as drawing a bright line that permits unilateral dismissal of a case by a plaintiff in the earliest stages of litigation . . . thus extinguishing the action and leaving it as though no suit had ever been brought." *Id.*

We specifically held that a notice of dismissal left the district court "without power to reinstate the action under Rule1-041(E)(2)." *Becenti*, 2004-NMCA-091, ¶ 14.

{24} In *Becenti*, we declined to decide whether the same logic applies to a district court's power to reopen a case under Rule 1-060(B) NMRA, which authorizes a party to seek relief from "a final judgment, order, or proceeding" for a series of reasons delineated in the rule. *Becenti*, 2004-NMCA-091, ¶ 11. We opined that scenarios involving Rule 1-060(B) and Rule 1-041(E)(2) were "factually inapposite," and we noted a decision of our Supreme Court that, without addressing the jurisdictional dispute, had considered the merits of a plaintiff's Rule 1-060(B) motion to set aside a stipulated dismissal. *Becenti*, 2004-NMCA-091, ¶ 11 (discussing *Meiboom v. Watson*, 2000-NMSC-004, 128 N.M. 536, 994 P.2d 1154, and cautioning against relying on an opinion as authority for a proposition not explicitly addressed). Thus, although *Becenti* held that a plaintiff's voluntary dismissal immediately terminates the district court's jurisdiction, it explicitly left unanswered the question whether an adverse party can move for relief under Rule 1-060(B). *Becenti*, 2004-NMCA-091, ¶¶ 11, 14. That is essentially the question that is raised here, where Chandler's motions to reopen *Bryce H.* and *Ryan S.* were granted based in part on Rule 1-060's counterpart in the children's court rules. *See* Rule 10-146 NMRA. Without controlling authority, we turn to federal construction for guidance. *See Albuquerque*

19

*Redi-Mix, Inc. v. Scottsdale Ins. Co.*, 2007-NMSC-051, ¶ 9, 142 N.M. 527, 168 P.3d 99 ("When our state court rules closely track the language of their federal counterparts, . . . federal construction of the federal rules is persuasive authority for the construction of New Mexico rules."); *Becenti*, 2004-NMCA-091, ¶ 10 (interpreting the state voluntary dismissal rule with reference to cases interpreting the federal rule).

{25} When a plaintiff files notice with the clerk under the terms stated in the voluntary dismissal rule, "[t]here is not even a perfunctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone." *See Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963). Although this would indicate that Rule 60(b), which only applies to final judgments, orders, or proceedings, cannot be used to reinstate a voluntarily dismissed action, some federal circuits permit a plaintiff to move under Rule 60 to reopen its own action on the theory that the Rule 41(a)(1)(A) filing is a "proceeding" to which Rule 60 applies. *See Yesh Music v. Lakewood Church*, 727 F.3d 356, 361-63 (5th Cir. 2013); Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party . . . from a final judgment, order, or *proceeding*." (emphasis added)). The Tenth Circuit appears to follow this approach, "embrac[ing] the proposition that a plaintiff who has dismissed his claim by filing notice [of dismissal] may move before the district court to vacate the notice on any

of the grounds specified in Rule 60(b)." *Schmier v. McDonald's LLC*, 569 F.3d 1240, 1243 (10th Cir. 2009) (internal quotation marks and citation omitted).

**{26}** However, we can locate no authority that grants the same right to an adverse party over a plaintiff's objection. *See Netwig v. Ga.-Pac. Corp.*, 375 F.3d 1009, 1010-11 (10th Cir. 2004) (distinguishing the two scenarios and holding that a district court cannot reinstate an action under Rule 60(b) over the plaintiff's objection). This one-sided application of Rule 60(b) is consistent with the general understanding, expressed in *Becenti*, that voluntary dismissal by notice is "a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court." 2004-NMCA-091, ¶ 10 (internal quotation marks and citation omitted). Our appellate courts have never strayed from that proposition. *See id.*; *see also McCuistion v. McCuistion*, 1963-NMSC-144, ¶ 10, 73 N.M. 27, 385 P.2d 357 (applying the similar voluntary dismissal-by-stipulation provision, which similarly leaves the court "without further jurisdiction and . . . no right to render any judgment"). *Meiboom*, in which our Supreme Court applied Rule 1-060(B) to an action that had been dismissed by stipulation, is entirely consistent with this approach. *See Meiboom*, 2000-NMSC-004, ¶ 4 (stating that it was the plaintiffs who moved to reopen the case). Thus, since CYFD objected to reinstatement on several occasions, in two motions and at a

21

hearing, neither Chandler nor the district court could have reinstated the cases over those objections.

**2.      The Relevance of the State and Federal Rules of Civil Procedure**

{27}      Chandler disputes the relevance of the civil voluntary dismissal rules to our analysis in only one respect. Seizing on the unique, definite article "the" in Rule 10-145(A)(1), he argues that the children's court rule contemplates a different meaning of the term "action" than the state and federal civil rules, both of which refer to "an action"—as opposed to "the action." *Compare* Rule 10-145(A)(1) ("In any action except a delinquency proceeding, *the* action may be dismissed by the petitioner without order of the court[.]" (emphasis added)), *with* Rule 1-041(A)(1), *and* Fed. R. Civ. P. 41(a)(1)(A). Therefore, Chandler contends, federal cases interpreting the term "action" under the rule to permit the dismissal of fewer than all defendants named in the complaint, *see* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2362, at 410 n.9 (listing cases that have applied this general proposition), are inapposite to our analysis, and CYFD had no ability under the children's court rule to dismiss Chandler without also dismissing the parents of Ryan S. and Bryce H. According to this logic, CYFD's notices of dismissal were legal nullities (since the parents still remained as parties) and, therefore, Chandler was still a party when CYFD later agreed to dismiss him with prejudice.

22

{28} We reject Chandler's argument for two reasons. First, we can see no meaningful difference between the use of the articles "the" and "an" in the context of the rules. The definite article "the" in the children's court rule, unlike the state and federal rules, follows a phrase that begins with the subject "any action[.]" Rule 10-145(A)(1) ("In *any action* except a delinquency proceeding, *the* action may be dismissed[.]" (emphasis added)). The use of "the" simply makes grammatical sense; it refers back to the thing (any action) previously mentioned. *See Webster's Third New Int'l Dictionary* 2368 (unabridged ed. 1986) (defining "the" as "a function word to indicate that a following noun . . . refers to someone or something previously mentioned or clearly understood from the context or the situation"). Given Rule 10-145's introductory phrase, the use of the alternative article "an" would have been nonsensical: "In any action except a delinquency proceeding, *an* action may be dismissed . . ." Thus, in this instance, the unique text of the rule is plainly stylistic; it does not appear to indicate any intention to modify the generally understood substantive meaning of the "action" that the petitioner may voluntarily dismiss.

{29} Second, to the extent there is any ambiguity, we construe the children's court rules, in part, to "secure simplicity in procedure[.]" Rule 10-101(B). The civil voluntary dismissal rule is "designed to permit a disengagement of the parties at the behest of the plaintiff in the early stages of a suit, before the defendant has expended

23

time and effort in the preparation of his case." *Pedrina v. Chun*, 987 F.2d 608, 610 (9th Cir. 1993) (alteration, internal quotation marks, and citation omitted). The federal courts interpret "action" under the rule to permit the dismissal of fewer than all of the named defendants because that interpretation is consistent with the purpose of the rule. *Id.* This flexibility seems even more appropriate in the children's court, where CYFD frequently takes emergency custody of children. Upon receiving a report of child abuse or neglect, CYFD is statutorily required to "ensure that immediate steps are taken to protect the health or welfare of the alleged abused or neglected child[.]" Section 32A-4-3(C). It must initiate abuse and neglect proceedings within two days of taking a child into custody, Section 32A-4-4(D), and presumably, not always with perfect information about the proper respondents.[2] Given the necessarily expedited nature of this process, it would be misguided to interpret Rule 10-145(A)(1) in such a way that CYFD has less flexibility to name and summarily dismiss respondents in abuse and neglect proceedings than a plaintiff has in a normal civil suit. Accordingly, in the present context, we find cases interpreting the state and federal voluntary dismissal rules persuasive to our analysis. *See Albuquerque Redi-Mix, Inc.*, 2007-NMSC-051, ¶ 9.

---

[2]When CYFD sought emergency custody and filed its abuse and neglect petition in the matter of Bryce H., for instance, the identities of his parents were still unknown.

24

### 3. Chandler's Remaining Arguments

{30} Chandler's remaining arguments in *Bryce H.* and *Ryan S.* are all geared toward escaping the effect of *Becenti*. He contends that, even if the cases could not be reopened under Rule 10-146, "a number of procedural rules empowered CYFD and the district court to rejoin Chandler as a respondent and then dismiss him with prejudice[.]" He characterizes CYFD's October 15 agreement to dismiss him with prejudice as an implied motion by CYFD to reopen the cases in accordance with the authorities discussed above. *See Schmier*, 569 F.3d at 1243 (holding that a plaintiff may move to vacate its own notice of dismissal). In the alternative, he argues that CYFD's agreement can be construed as an implied motion to rejoin Chandler under Rule 10-121(B)(2) NMRA, or that the district court impliedly rejoined Chandler under Rule 10-121(B)(4), or impliedly permitted Chandler to intervene post-dismissal under Rule 10-122(B)(2) NMRA. He finally argues that the common law doctrine of judicial estoppel and the court's inherent authority permitted it to reinstate Chandler over CYFD's objection.

{31} None of these arguments are persuasive. *Becenti*, 2004-NMCA-091, ¶ 10 ("There is *nothing* the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court." (emphasis added) (internal

quotation marks and citation omitted)).[3] CYFD did not impliedly move to reopen *Bryce H.* or *Ryan S.* It expressly opposed reopening the cases. The district court did not rejoin Chandler or permit Chandler to intervene; its orders were entirely grounded on Rule 10-146 and the doctrine of judicial estoppel. Pursuant to *Becenti* and the federal authorities that informed it, there is simply no role for Rule 10-146 or equitable principles in this analysis. *Becenti*, 2004-NMCA-091, ¶ 12.

**CONCLUSION**

{32}   We affirm the district court in *Tierra Blanca Ranch High Country Youth Program v. CYFD*, No. D-0721-CV-2013-00107, and reverse and vacate the dismissals with prejudice in the matters of *In re Bryce H.*, No. D-0721-JQ-2013-06, and *In re Ryan S.*, No. D-0721-JQ-2013-10.

{33}   **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

---

[3]Chandler should not even have been permitted to object to the notices of dismissal at the October 15 hearing in the first place. There should never have been any need for CYFD to come to any agreement to dismiss him with prejudice.

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**TIMOTHY L. GARCIA, Judge**